[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15464

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-00036-CV-LTW-3

KENDRA OWEN,

Plaintiff-Appellant,

versus

I. C. SYSTEM, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 7, 2011)

Before HULL and MARCUS, Circuit Judges, and WHITTEMORE,[*] District
Judge.

---

[*]Honorable James D. Whittemore, United States District Judge for the Middle District of
Florida, sitting by designation.

HULL, Circuit Judge:

Plaintiff Kendra J. Owen ("Owen") sued I.C. System, Inc. ("ICS"), a debt collection company, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The district court denied Owen's motion for summary judgment and granted ICS's motion for summary judgment based on its affirmative defense of "bona fide error" under 15 U.S.C. § 1692k(c). Plaintiff appeals, contending that ICS did not maintain "procedures reasonably adapted to avoid" errors, as required by § 1692k(c), and thus cannot invoke the bona fide error defense as a matter of law. After review and oral argument, we reverse.

## I. FACTUAL BACKGROUND

### A. Plaintiff's Debt

In July 2006, Plaintiff Owen brought her cat to All About Animals Veterinary Services, P.C. ("AAA") for medical treatment. Six years prior, Owen registered her cat at AAA and signed a one-page registration form ("the agreement") stating, in relevant part, that she would pay interest at "1.5% per month or 18% per year" and "reasonable collection fees":

> In the event this account goes to collection, I understand I am responsible for any and all interest charges incurred and reasonable collection fees that will be added. Interest charges accrue at the rate of 1.5% per month or 18% per year.

On July 24, 2006, AAA charged Owen $780.10 for veterinary services, $100 of which Owen paid. Because Owen could not pay the remaining balance, her husband signed a promissory note that day pledging that he and Owen would pay $100 every two weeks until the bill was paid in full. Owen made two more payments of $100, leaving a balance of $480.10.

Owen failed to meet her next $100 payment obligation. On September 27, 2006, AAA imposed a 1.5% interest charge ($7.20) on Owen's balance of $480.10, pursuant to her agreement. This made Owen's balance $487.30. On September 30, 2006, Owen received an additional $42.79 in veterinary services and made a $145 payment. This left Owen's balance as $385.09.

Owen made no payment thereafter, and AAA periodically imposed 1.5% interest charges. The unpaid interest charges were added to the running balance due, resulting in Owen being charged interest on previous interest due. Owen's agreement stated that "interest charges accrue at the rate of 1.5% per month or 18% per year," which reflects a simple interest rate of 1.5% over 12 periods (1.5% x 12 = 18%). Owen, however, was charged compound interest (i.e., interest on interest).[1]

Additionally, AAA levied a 33% collection charge, along with a "7%

---

[1] At a 1.5% compound interest rate, interest charges accrued at 19.56% per year, since $(1 + .015)^{12} - 1 = .1956$, or 19.56%.

Interest" fee. The basis of this latter fee is somewhat unclear, but it does not reflect any of the authorized charges mentioned in Owen's agreement. In a deposition, AAA representative Susan Ellis stated that the "7% Interest" fee was "the interest that [ICS] ha[s] always told us to put on" when AAA places accounts for collection. She further testified that this practice was "what I've always been taught from the previous [AAA] managers."

The following chart reflects AAA's debit and credit entries on Owen's account statement:

| Date | Description | Charges | Payments | Run. Bal. |
|---|---|---|---|---|
| 7/24/06 | Veterinary Services | $780.10 | | $780.10 |
| 7/24/06 | Cash | | $100.00 | $680.10 |
| 8/08/06 | Check | | $100.00 | $580.10 |
| 8/25/06 | Check | | $100.00 | $480.10 |
| 9/27/06 | Finance Charge[2] | $7.20 | | $487.30 |
| 9/30/06 | Veterinary Services | $42.79 | | $530.09 |
| 9/30/06 | Cash | | $145.00 | $385.09 |
| 11/4/06 | Finance Charge | $5.78 | | $390.87 |
| 12/29/06 | Finance Charge | $5.86 | | $396.73 |
| 2/9/07 | Finance Charge | $5.95 | | $402.68 |

_____

[2]The first finance charge on September 27, 2006 represents a 1.5% interest charge only on principal, as the running balance is only principal at that point. The next four finance charges constitute 1.5% compound interest charges, since the running balance includes both principal and interest at those junctures.

| 3/27/07 | Finance Charge | $6.04 | | $408.72 |
|---|---|---|---|---|
| 3/27/07 | 33% Collect Charge | $134.87 | | $543.59 |
| 3/27/07 | 7% Interest | $28.61 | | $572.20 |

## B.    ICS's Collection

On March 27, 2007, AAA referred Plaintiff Owen's outstanding debt to Defendant ICS for collection.  Using ICS's Internet web page, AAA communicated the debt to ICS as $408.72 in principal, a $134.87 collection charge, and a $28.61 interest fee.  These three amounts totaled $572.20.  ICS is a debt collector that must comply with the provisions of the FDCPA.[3]  AAA's contract with ICS (1) provided that AAA would provide accurate information and place with ICS only debts that were "validly due and owing" and (2) reserved to ICS the right to modify or eliminate interest rates and other charges if ICS deemed it necessary to comply with the law:

> We need accurate account information and proper authorization. Provide accurate information on each account and promptly report any payments you receive on accounts placed with us.  Place only amounts over $25 that are validly due and owing by the debtor indicated.  This applies to the principal, any charges added to the principal, and any rate of interest you request to be accrued.  We may limit the rate of interest or other charges you have added to an account

___

[3]The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  It is undisputed that ICS falls within this statutory definition.

<u>or refuse to add any if we believe we need to do so to operate lawfully</u>. You must ensure that you have any consents &/or necessary authorizations for you to share information with us.

(emphasis added). For its services, ICS would receive 33% of all amounts collected on each consumer account.

On March 28, 2007, ICS sent a letter to Owen notifying her of its role as debt collector and stating the total amount owed as $572.20, the figure provided by AAA. ICS categorized this debt figure as $408.72 "Principal," a $134.87 "Collection Charge," and $28.61 "Interest." This $408.72 "Principal" incorporated both principal <u>and</u> the 1.5% interest charges that AAA had previously added to the account. The $134.87 "Collection Charge" constituted a 33% levy on the $408.72 "Principal." Meanwhile, the $28.61 "Interest" charge represented a "7% Interest" fee on the $408.72 "Principal." ICS's March 28 letter notified Owen that "[i]nterest at the rate of 7.00% annually is being added to this delinquent account." The letter further instructed Owen that "I.C. System will forward the account information to the national credit reporting agencies if you fail to fulfill the terms of your credit obligations."

On April 13, 2007, Owen sent a letter to ICS stating, "I dispute the amount you allege is owed," though she did not elaborate on any alleged discrepancies. In accordance with FDCPA provisions, ICS sent a letter to AAA notifying it that

6

Plaintiff Owen disputed the amount of her debt.[4] ICS sought verification of the amount owed and instructed AAA to send a "separate explanation and invoice."

On May 1, 2007, AAA sent these documents to ICS: (a) a cover letter describing the debt and prior attempts to collect; (b) an estimate of veterinary services to be performed; (c) a medical record detailing procedures performed and client communications; (d) the promissory note signed by Owen's husband; (e) Owen's agreement with AAA specifying that she would pay interest at 1.5% per month or 18% per annum; and (f) Owen's account statement listing all individual charges (for services, finance charges, collection charges, and a "7% Interest" fee) and payments, as shown in the chart above.

These last two documents on their face revealed at least two apparent discrepancies: (1) AAA's account statement shows four separate compound interest charges on Owen's running balance of combined principal and interest, instead of the 1.5% simple interest specified in Owen's agreement and (2) AAA's account statement shows that on March 27, 2007, an additional "7% Interest" fee was added to Owen's balance, though this fee was not authorized by Owen's

[4]15 U.S.C. § 1692g provides, in relevant part:
(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . .
15 U.S.C. § 1692g(b).

agreement and though 1.5% monthly finance charges had been added in November and December 2006 and February and March 2007.

Despite these facial inconsistencies, there is nothing in the current record indicating that ICS consulted with AAA regarding these unauthorized charges, nor is there any evidence that ICS itself reviewed the documents before forwarding them to Owen.

In a May 9, 2007 letter, ICS forwarded these documents to Owen, notifying her that she must contact ICS's offices immediately if she continued to dispute the amount of her debt:

> Your creditor, All About Animals, has provided the attached information, substantiating your responsibility for payment of the above referenced debt. If you still question that responsibility, contact our office immediately, otherwise your remittance of $574.66[5] is required.

Additionally, ICS's May 9 letter informed Owen again that, if the debt were not paid, ICS would notify national credit reporting agencies of this delinquency:

> We forward our collection experience, regarding the debts that we handle, to several national credit reporting agencies. As a result, this debt and your dispute regarding the claimed amount owed, may remain in your credit history for up to seven years. Paying this debt NOW, [sic] will minimize the impact of its delinquency on that credit history. You have the right to inspect your credit rating in accordance with federal law.

---

[5]This $574.66 figure represented the $572.20 amount placed for collection and $2.46, classified as "Interest Since Placement."

8

Despite ICS's request, Owen did not contact ICS. In a deposition, Owen later stated that she did not further dispute these charges with ICS because "I couldn't afford to file" a lawsuit at that time. On May 24, June 6, July 6, and August 7, 2007, ICS sent Owen additional collection letters requesting payment of the remaining veterinary debts. Owen never responded.

## II.  PROCEDURAL HISTORY

### A.  Second Amended Complaint

In March 2008, Plaintiff Owen, proceeding pro se, filed a complaint against ICS. In October 2008, Owen filed a second amended complaint alleging ICS violated these FDCPA provisions: (1) 15 U.S.C. § 1692e(2)(A) (prohibiting the false representation of "the character, amount, or legal status of any debt"); (2) 15 U.S.C. § 1692e(2)(B) (prohibiting the false representation of "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt"); (3) 15 U.S.C. § 1692e(5) (prohibiting "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken"); (4) 15 U.S.C. § 1692e(8) (prohibiting debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed"); (5) 15 U.S.C. § 1692e(10) (prohibiting "[t]he use of

9

any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"); and (6) 15 U.S.C. § 1692f(1) (prohibiting "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

Owen's second amended complaint alleged that ICS violated the above FDCPA provisions because its letters (1) impermissibly sought payment of unearned interest and thereby misrepresented the amount of the debt; (2) improperly charged a 33% collection fee, when ICS charged AAA only a 30% collection fee; (3) misrepresented that the debt had matured, (4) falsely stated that additional charges may be added to the account; and (5) falsely reported the amount of the debt to national credit reporting agencies. Pursuant to 15 U.S.C. § 1692k, Owen sought to recover up to $1,000 in statutory damages and approximately $804 in costs.

## B. Cross Motions for Summary Judgment

In November 2008, ICS filed a motion for summary judgment on all of Owen's claims. For purposes of its motion, ICS did not claim all charges were proper but stated that "the alleged error with respect [to] Plaintiff's account was caused by AAA's clerical mistake." ICS asserted two primary reasons for why it

was not liable. First, ICS noted that AAA, not ICS, placed the improper charges on Owen's account and that ICS did not knowingly or intentionally attempt to collect debts that were not due and owing. Second, ICS argued that the FDCPA did not require it to independently investigate the accuracy of AAA's charges and that it was entitled to rely on AAA's representations under the "bona fide error" affirmative defense in 15 U.S.C. § 1692k(c).

Owen opposed ICS's motion and filed her own motion for summary judgment. Owen's motion contended that: (1) AAA's 1.5% interest charges and the "7% Interest" fee violated various FDCPA provisions and Georgia usury laws[6] and (2) a debt collector's mere reliance upon a creditor to provide accurate information did not entitle an FDCPA defendant to the bona fide error defense.

In a September 2009 order, the district court granted ICS's motion and denied Owen's motion. The district court concluded the FDCPA was a strict liability statute and ICS's lack of knowledge or intent did not absolve it from liability. The district court determined, however, that ICS was entitled to the bona fide error defense because ICS's procedures were reasonably adapted to avoid

---

[6]Owen's summary judgment motion argued that ICS failed to recognize that AAA's interest charges, when added together, violated Georgia's usury laws, specifically O.C.G.A. §§ 7-4-2(a)(2) and 7-4-10(a).

error.[7]

Plaintiff Owen timely appealed. On appeal, Owen, now represented by counsel, argues that the district court erred (1) in granting summary judgment to ICS based on the bona fide error defense and (2) in denying her summary judgment motion as to that defense.

## III. STANDARD OF REVIEW

We review de novo the district court's rulings on the parties' cross motions for summary judgment. LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189 (11th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The Court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).

## IV. DISCUSSION

---

[7]The district court also pointed out that the record did not substantiate Owen's claim that ICS charged AAA only a 30% fee. The district court concluded that nothing in the FDCPA prohibited the imposition of a collection fee based upon a percentage. Owen does not challenge this ruling on appeal.

12

## A.    Bona Fide Error Defense

In 1977, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits, inter alia, debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f. Debt collectors may collect only amounts that are  "expressly authorized by the agreement creating the debt or permitted by law." Id. § 1692f(1). Moreover, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Id. § 1692e.

The FDCPA provides for a civil cause of action to enforce its provisions, with debt collectors who violate the Act liable for actual damages, statutory damages up to $1,000, and reasonable attorney's fees and costs. See Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1352 (11th Cir. 2009) (citing 15 U.S.C. § 1692k(a)(1)-(3)).

This appeal concerns only whether ICS or Owen was entitled to summary judgment as to ICS's affirmative defense of bona fide error. In reviewing the

13

parties' cross motions for summary judgment, we assume, arguendo, that ICS

committed the FDCPA violations alleged by Owen.[8]

The FDCPA typically subjects debt collectors to liability even when

violations are not knowing or intentional.  See LeBlanc, 601 F.3d at 1190 (stating

the FDCPA has been described as "a strict liability statute").  Nevertheless, the

FDCPA affords a narrow carve-out to the general rule of strict liability, known as

the "bona fide error" defense.[9]  Section 1692k(c) of the FDCPA provides that:

> A debt collector may not be held liable in any action brought under
> this subchapter if the debt collector shows by a preponderance of
> evidence that the violation was not intentional and resulted from a
> bona fide error notwithstanding the maintenance of procedures
> reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c) (emphasis added).  This bona fide error defense in

§ 1692k(c) is an affirmative defense, for which the debt collector has the burden of

proof.  Specifically, a debt collector bears a three-part burden of showing that its

FDCPA violation (1) was "not intentional"; (2) was "a bona fide error"; and (3)

---

[8]As noted earlier, for purposes of its summary judgment motion and this appeal, ICS did not claim that the four compound interest charges (1.5% monthly interest on past-due interest) or the additional "7% Interest" fee were proper.  Therefore, for purposes of this appeal, we refer to those interest charges collectively as the FDCPA violations.  As this appeal concerns only ICS's entitlement to the bona fide error defense, we make no ruling on the issue of whether these interest charges violated the FDCPA.

[9]The FDCPA contains another exception to the strict liability rule, providing that debt collectors will not be liable for "any act done or omitted in good faith in conformity with any advisory opinion of the [Federal Trade] Commission."  15 U.S.C. § 1692k(e).  However, § 1692k(e) is not implicated here.

occurred despite the maintenance of procedures "reasonably adapted to avoid any such error." Edwards, 584 F.3d at 1352-53.

In the district court and on appeal, Plaintiff Owen does not dispute that ICS's FDCPA violations were unintentional and bona fide errors. Rather, Owen contends that ICS did not satisfy the third element of the bona fide error defense: the maintenance of procedures reasonably adapted to avoid the type of errors at issue (namely, the improper charges of compound interest and the "7% Interest" fee).

On appeal, Owen advances two primary arguments. First, she contends that the Supreme Court's decision in Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. __, 130 S. Ct. 1605 (2010), forecloses ICS's bona fide error defense. Second, even if Jerman does not apply, Owen asserts that ICS did not meet the third element of the defense. We discuss both arguments below.

**B.      Supreme Court's Jerman Opinion**

In Jerman, the Supreme Court addressed whether the FDCPA's bona fide error defense could immunize debt collectors from liability when their violations stemmed from "a debt collector's mistaken interpretation of the legal requirements of the FDCPA." Id. at __, 130 S. Ct. at 1608 (emphasis added).

The plaintiff debtor in Jerman sued a law firm and an attorney for FDCPA

15

violations, committed while they were acting as debt collectors. The FDCPA has a notice provision that requires debt collectors to send written notice to the debtor that the debt will be assumed valid unless the debtor disputes it. 15 U.S.C. § 1692g(a).[10] The collection attorney's notice letter in Jerman stated that the mortgage debt at issue would be assumed valid unless the debtor disputed that debt in writing. 559 U.S. at __, 130 S. Ct. at 1609.

The Jerman plaintiff debtor contended that the collection attorney violated the FDCPA by imposing a requirement that the debtor dispute the debt in writing, when the FDCPA required only that the debtor dispute the debt and did not specify that it be in writing. Observing that authority was split on the issue, the district court ultimately agreed with the plaintiff debtor that this writing requirement in the collection attorney's notice letter constituted an FDCPA violation.[11] Jerman v. Carlisle, 464 F. Supp. 2d 720, 724, 725 (N.D. Ohio 2006). In a later proceeding, however, the district court held that the collection attorney was entitled to the bona

_____

[10]Section 1692g(a) states:
Within five days after the initial communication with a consumer in connection with the collection of any debt," a debt collector must send written notice to the debtor containing, inter alia, "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.
15 U.S.C. § 1692g(a), (a)(3).

[11]Because the issue was not raised on appeal, neither the Sixth Circuit nor the Supreme Court expressed a view on whether the collection attorney's inclusion of a writing requirement in the notice letter violated § 1692g(a). See Jerman, 559 U.S. at __ n.3, 130 S. Ct. at 1610 n.3.

16

fide error defense.  <u>Jerman v. Carlisle</u>, 502 F. Supp. 2d 686, 697 (N.D. Ohio 2007).

The Sixth Circuit affirmed.  <u>Jerman v. Carlisle</u>, 538 F.3d 469, 471 (6th Cir. 2008).

The Supreme Court reversed, concluding that the FDCPA's bona fide error defense does not encompass "mistakes of law" or "misinterpretations of the requirements of the Act" itself.  <u>Jerman</u>, 559 U.S. at __, 130 S. Ct. at 1611, 1615. Instead, the seven-member majority concluded that § 1692k(c)'s requirement that debt collectors maintain procedures reasonably adapted to avoid any bona fide errors referred only to measures designed "to avoid errors like clerical or factual mistakes." <u>Id.</u> at __, 130 S. Ct. at 1614.

The Supreme Court further stated, "we need not and do not decide today the precise distinction between clerical and factual errors, or what kinds of factual mistakes qualify under the FDCPA's bona fide error defense." <u>Id.</u> at __ n.12, 130 S. Ct. at 1618 n.12.  Nor did the Supreme Court need to resolve the issue of what procedures to avoid clerical or factual errors were sufficient to entitle a debt collector to the bona fide error defense.  However, in dicta the Supreme Court proffered various observations about the third element of the bona fide error defense.

For instance, the <u>Jerman</u> majority remarked that Congress's use of the word "procedures" connoted a routinized process of error-checking, observing that

17

"[t]he dictionary defines 'procedure' as 'a series of steps followed in a regular orderly definite way.'" Id. at __, 130 S. Ct. at 1614 (quoting Webster's Third New International Dictionary 1807 (1976)).

The Jerman majority also noted that § 1692k(c)'s phrase "the maintenance of procedures reasonably adapted to avoid any such error" is "more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." Id. The majority offered two such examples, citing "the kind of internal controls a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of day or make false representations as to the amount of a debt." Id. (citations omitted) (emphasis added). The Supreme Court contrasted these procedures with procedures maintained to avoid mistakes in legal reasoning, which "is not a mechanical or strictly linear process." Id.

Here, debtor Owen argues that ICS's errors were erroneous legal interpretations of the scope of the FDCPA and therefore, under Jerman, ICS's bona fide error defense fails. We disagree with Owen's characterization. The type of errors that Owen complains about are factual or clerical mistakes regarding the type of charges she assented to in her agreement with AAA.[12] Specifically, Owen

---

[12]As mentioned earlier, the Supreme Court has not delineated the distinction between factual mistakes and clerical errors, nor has the record been adequately developed to enable us to

18

points out that her agreement with AAA (1) provided for only 1.5% monthly simple interest on principal and (2) did not contain an additional "7% Interest" fee. Yet, AAA mistakenly included compound interest (1.5% interest on past-due interest) and a "7% Interest" fee on her account.

There is no evidence, nor does Owen contend, that ICS harbored a belief that it could lawfully operate within the bounds of the FDCPA while attempting to collect interest charges that Owen never agreed to. There is no evidence that ICS exercised any legal judgment as to the interest charges; rather, ICS indiscriminately accepted AAA's interest charges as factually accurate and proceeded to collect them. Because ICS's errors did not constitute mistakes of law, the Jerman decision does not preclude ICS's bona fide error defense.[13]

Therefore, we turn to Owen's second argument: that ICS did not satisfy the third element of the bona fide error defense.

## C. ICS's Procedures

---

answer this question here. We note, however, that the proper determination of this issue is irrelevant for purposes of this summary judgment motion, since the bona fide error defense embraces both clerical and factual errors. See Jerman, 559 U.S. at __, 130 S. Ct. at 1614.

[13]Owen contends ICS's errors resulted from a mistaken legal interpretation of both the FDCPA's requirements and Georgia's usury laws. Although the Supreme Court acknowledged a circuit split regarding whether the bona fide error defense applies to FDCPA violations arising from misinterpretations of state law, it expressly declined to resolve this issue. See Jerman, 559 U.S. at __ n.4, 130 S. Ct. at 1610 n.4. We also need not address this issue, as ICS made factual mistakes and is not entitled to the bona fide error defense in any event. See Section IV.C, infra.

Until now, this Court has not specifically addressed the third element of the bona fide error defense: that the debt collector maintained procedures reasonably adapted to avoid errors. In fact, in Edwards we expressly declined to decide whether the debt collector met this third requirement because the collector already failed to demonstrate that the FDCPA violation was unintentional and a bona fide error.[14] 584 F.3d at 1354. In LeBlanc, meanwhile, we held that the debt collector's entitlement to the bona fide error defense was not properly before the Court, since the issue was never raised in the district court. 601 F.3d at 1199. Accordingly, this appeal presents an issue of first impression: what procedures are sufficient to show that a debt collector maintained procedures reasonably adapted to avoid errors that violate the FDCPA?

At the outset, we agree with the Tenth Circuit that "the procedures component of the bona fide error defense involves a two-step inquiry." Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006); see also Reichert v. Nat'l Credit Sys. Inc., 531 F.3d 1002, 1006 (9th Cir. 2008) (quoting same). The first step is "whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors." Johnson, 443 F.3d at 729; Reichert,

_____

[14]In Edwards, the debt collector, by its own admission, had deliberately neglected to disclose in its communications with the debtor that it was a debt collector. See Edwards, 584 F.3d at 1353. Furthermore, because this violation was not objectively reasonable, the mistake did not constitute bona fide error. See id. at 1353-54.

531 F.3d at 1006. The second step is "whether the procedures were 'reasonably adapted' to avoid the specific error at issue." Johnson, 443 F.3d at 729; Reichert, 531 F.3d at 1006.

We also agree with other circuits that this is a "fact-intensive inquiry." Wilhelm v. Credico, Inc., 519 F.3d 416, 421 (8th Cir. 2008); see also Reichert, 531 F.3d at 1006 (quoting same). Despite surveying the case law, we have located no definitive list of procedures, or even universally applicable parameters, by which to assess the third element. Rather, the legal analysis has proceeded on a case-by-case basis and depended upon the particular facts and circumstances of each case.[15] Accordingly, we turn to the particular errors and procedures involved here.

ICS identifies three procedures it posits are reasonably adapted to avoid the

_____

[15]Compare Reichert, 531 F.3d at 1005, 1007 (concluding debt collector did not qualify for bona fide error defense when it (1) relied on a creditor's past provision of accurate debt information and (2) submitted only a conclusory declaration stating that it maintained "extensive procedures" to prevent FDCPA violations, without explaining what procedures it had), with Wilhelm, 519 F.3d at 421 (upholding entitlement to bona fide error defense where debt collector mistakenly added interest on past-due interest because it trained and instructed employees to segregate unpaid principal from past-due interest to prevent FDCPA violations), Hyman v. Tate, 362 F.3d 965, 967-68 (7th Cir. 2004) (concluding debt collector was entitled to bona fide error defense for a collection letter sent to a bankrupt debtor given evidence that (1) debt collector trained its employees in proper collection procedures to ensure FDCPA compliance, (2) only .01% of referred accounts were found to be in bankruptcy, and (3) it would cost $1.5 million per year to request a credit report on every account it was referred), and Jenkins v. Heintz, 124 F.3d 824, 834 (7th Cir. 1997) (upholding entitlement to bona fide error defense where debt collector's procedures included "the publication of an in-house fair debt compliance manual, updated regularly and supplied to each firm employee; training seminars for firm employees collecting consumer debts; and an eight-step, highly detailed pre-litigation review process to ensure accuracy and to review the work of firm employees to avoid violating the Act").

21

erroneous interest charges here: (1) ICS contractually obligated AAA to present only accurate information on debts, which must be "validly due and owing"; (2) after Owen contested the debt, ICS suspended collection efforts, obtained verification documents from AAA, and provided these documents to Owen; and (3) in the May 9, 2007 letter enclosing these AAA documents, ICS requested that Owen contact ICS's office if she continued to contest the debt.[16] Regarding the above two-step inquiry, ICS has met the low threshold required by the first step because the evidence shows ICS has "maintained" these two procedures: ICS introduced the contract signed by AAA and the letters ICS sent to Owen. However, for several reasons, ICS fails the second step.

First, ICS's suspension of collection efforts once Owen contested the debt, along with its subsequent receipt and delivery of debt verification materials to Owen, do not constitute procedures "reasonably adapted to avoid" interest errors. Rather, they are statutory requirements. See 15 U.S.C. §§ 1692g(b) (mandating debt collectors, upon debtor disputing debt, to cease collection, obtain verification of the debt, and provide verification to debtor). If debt collectors could meet their

_____

[16]Owen argues that ICS's assertions respecting this third procedure are waived, since ICS never raised this argument in its motion for summary judgment. Because we conclude that ICS's reasoning on this point lacks foundation, see infra p. 24, we need not address this waiver issue. We also stress that, at the summary judgment stage, ICS put in evidence only these procedures and relied heavily on the terms of its contract with AAA. If ICS has other procedures, they were not placed in the record at the summary judgment stage.

bona fide error defense burden by fulfilling their other statutory duties, the third element of § 1692k(c) would be mere surplusage. Such an interpretation would allow debt collectors to violate some provisions of the FDCPA so long as they complied with the rest of the Act, a result clearly at odds with Congress's intent. See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993) (stating that a single violation of an FDCPA provision is sufficient to establish civil liability).

Second, the May 9, 2007 letter—requesting Owen to contact ICS's office if she continued to dispute her debt—is not a procedure "reasonably adapted to avoid" errors, as ICS's March 28, 2007 letter already had sought collection of the improper charges. At best, this after-the-fact procedure is adapted to prevent the error from occurring again. Yet, Congress designed the FDCPA to prevent debt collection abuses, not to furnish debt collectors with a free pass as to errors in their first collection attempts. See Reichert, 531 F.3d at 1007 (stating debt collectors are "not entitled under the FDCPA to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence").

Third, ICS's contract with AAA—that AAA "[p]lace only amounts over $25 that are validly due and owing"—is a form contract that was signed four years before the Owen debt was sent to ICS for collection in 2007. Employing a one-time form contract with AAA four years prior and blindly relying on creditors to

23

send only valid debts is a procedure, but it is not one reasonably adapted to avoid the type of erroneous interest charges at issue here. ICS's own contract with AAA makes this point because it provides that ICS "may limit the rate of interest or other charges you [AAA] have added to an account or refuse to add any if we believe we need to do so to operate lawfully." In other words, ICS's contract anticipates that the creditor AAA may potentially place erroneous interest charges on accounts and gives ICS the explicit right not to collect any improper interest AAA has added.

Importantly too, the errors here were not errors requiring ICS to further investigate the validity of AAA's listed charges. Rather, the errors were discernible on the face of AAA's documents forwarded to ICS and therefore readily discoverable by ICS. For instance, a cursory review of just two documents supplied to ICS—AAA's three-page account statement for Owen and one-page agreement with Owen—would have revealed that AAA (1) combined principal and interest in Owen's running balance column, thereby charging monthly compound interest and (2) included an extra "7% Interest" fee on Owen's account that was not included in Owen's written agreement with AAA. Earlier we listed the entries on Owen's account statement which readily show, for example, that AAA on March 27, 2007 placed both a 1.5% monthly finance charge on the running balance and a

24

"7% Interest" fee on Owen's account.

We recognize that the record is unclear regarding exactly what information AAA relayed to ICS when it first placed Owen's account for collection, aside from the amount of the debt. On appeal, ICS does not argue that it did not have access to Owen's account statement when it sent its initial March 28, 2007 letter. Even if ICS did not have this statement until May 9, 2007—when it undisputably had copies of Owen's agreement and account statement—ICS continued to collect these same compound interest charges and the "7% Interest" fee in letters on May 9, May 24, June 6, July 6, and August 7, 2007.

Fourth, and most notably, ICS has not indicated any internal, error-correction procedures to avoid miscalculations of debt amounts, such as interest on past-due interest or extra fees beyond the debtor's unambiguous written agreement. ICS has not offered evidence of any training techniques it employs to foster FDCPA compliance.[17] For example, ICS cited no evidence that it trains its employees to examine principal and interest to avoid compound interest errors, much less any internal procedures to segregate principal and interest to avoid

_____

[17]In a motion to compel discovery, Owen sought access to, inter alia, "any practice manual, procedure manual, or any other document, letter or memorandum setting forth Defendant's policies or practices" and "the curriculum, including any and all displays, exhibits and media of any kind, used in any training provided to any employee." In response, ICS filed a motion for a protective order, arguing that these requested materials were protected trade secrets. In January 2009, the district court denied Owen's motion to compel and granted ICS's motion for a protective order.

collection errors.  Cf. Wilhelm, 519 F.3d at 421 (upholding bona fide error defense when debt collector trained employees to segregate principle and interest to avoid interest-on-interest errors).   ICS cited no internal procedures it employed to compare, even briefly, the interest charges permitted by Owen's agreement with AAA versus the multiple types of interest placed on Owen's account ledger.  In sum, ICS cited no internal controls it employs to reduce the incidence of improper debt collection.  Rather, ICS's procedure is to outsource its oversight task to its creditor AAA, which must report only debts that are "validly due and owing."

In reaching our conclusion that ICS's procedures (as presented in the limited record here) are not sufficient under the third element of the bona fide error defense, we also recognize that debt collectors operate under time and resource constraints.  Moreover, we agree with ICS that the FDCPA does not require debt collectors to independently investigate and verify the validity of a debt to qualify for the bona fide error defense.  See 15 U.S.C. § 1692k(c); see also Hyman v. Tate, 362 F.3d 965, 968 (7th Cir. 2004); Jenkins v. Heintz, 124 F.3d 824, 834-35 (7th Cir. 1997); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1032 (6th Cir. 1992).[18]

---

[18]While we agree with Smith's principle that debt collectors have no duty to independently investigate and verify debts, we point out that Owen's case is factually distinguishable from Smith.  The FDCPA violation in Smith stemmed from a $10 error attributed to the creditor's incorrect accounting figures, which were wrongly reported to the debt collector. 953 F.2d at 1032.  The Sixth Circuit cited only one procedure: a referral form signed by the creditor that it would only claim amounts "legally due and owing."  Id.  The Sixth Circuit, providing scant analysis of the issue, held that the debt collector was entitled to the bona fide

However, to qualify for the bona fide error defense, the debt collector has an affirmative statutory obligation to maintain procedures reasonably adapted to avoid readily discoverable errors, such as the interest errors here. See 15 U.S.C. § 1692e(2)(A) (prohibiting the false representation of "the character, amount, or legal status of any debt"); id. § 1692f(1) (prohibiting "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law"). A debt collector does not fulfill this affirmative obligation by delegating it entirely to creditors, such as AAA, whose actions are not even regulated by the FDCPA. See 15 U.S.C. § 1692k(a) (subjecting debt collectors to civil liability for FDCPA violations).[19]

A contrary conclusion would portend consequences not intended by

---

error defense, since it reasonably relied on the accuracy of the creditor's debt amount and was not required to perform an independent investigation to assure its accuracy. Id.

In Smith, there was no allegation of phantom interest charges or itemized fees added to the account, nor any evidence that the debt collector could have prevented the error merely by checking the creditor's interest calculations. Here, by contrast, ICS did not need to investigate independently the debt charges because even a perfunctory review of the account summary and Owen's agreement would have readily revealed the errors. To the extent Smith implies that a referral or agreement—stating the creditor will refer only valid debts—alone insulates a debt collector from FDCPA liability, we disagree.

[19]We recognize that ICS stresses that (1) Owen's letter disputing the debt did not specify why the charges were improper and (2) Owen did not send further correspondence after ICS supplied her with AAA's documentation. The problem for ICS is that its first collection letter, with its several errors, violated the FDCPA. Owen's conduct after the fact does not neutralize these infractions.

Congress when it enacted the FDCPA. In listing the statutory purposes of the FDCPA, Congress identified the need "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). This purpose would be completely frustrated were we to accept ICS's argument that its one-time instruction to AAA—to refer only debts "validly due and owing"—shields it from liability. Such reasoning would allow debt collectors to make an end-run around statutory provisions that ensure accurate collection practices merely by inserting boilerplate language in its contracts with creditors. Debt collectors who presently maintain internal procedures to avoid FDCPA errors would be incentivized to scrap these measures altogether, since full immunity could be guaranteed by placing the onus of accuracy on creditors.[20] This would precipitate a race to the bottom among debt collectors, rendering the FDCPA a dead letter.

Lastly, we reiterate that the third element of the bona fide error defense is a uniquely fact-bound inquiry susceptible of few broad, generally applicable rules of law. Thus, in concluding that ICS is not entitled to § 1692k(c)'s bona fide error defense under the particular factual circumstances in this case, we refrain from volunteering sweeping generalizations about what procedures would be enough for

---

[20]Nor would debt collectors have an incentive to contract with accurate creditors, since they would be immune from liability regardless.

28

a debt collector to effectively assert that defense. Such matters are better resolved on a case-by-case basis. We hold only that ICS's limited procedures placed in this record were not reasonably adapted to avoid the type of interest errors here.

## V. CONCLUSION

For the above reasons, we reverse the district court's grant of summary judgment in favor of ICS and denial of Owen's summary judgment motion as to the bona fide error defense. We remand with instructions to enter summary judgment in favor of Owen on ICS's affirmative defense of bona fide error and for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**