[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 12-11754
Non-Argument Calendar

————————

D. C. Docket No. 4:11-cv-00032-WTM-GRS

OCCIDENTAL FIRE & CASUALTY COMPANY OF
NORTH CAROLINA, INC.,

Plaintiff-Appellee,

versus

NATIONAL INTERSTATE INSURANCE COMPANY,
C&K TRUCKING, LLC,

Defendants-Appellants,

EUGENE HOWARD, et al.,

RUTH H. MATHIS,
JAMES E. MATHIS,

Defendants-Appellees.

————————

Appeal from the United States District Court
for the Southern District of Georgia

————————

(March 22, 2013)

Before DUBINA, Chief Judge, TJOFLAT and MARCUS, Circuit Judges.

PER CURIAM:

Defendants/Appellants National Interstate Insurance Company ("National") and C&K Trucking, LLC ("C&K") (collectively "Appellants") appeal the district court's entry of summary judgment in favor of Plaintiff/Appellee Occidental Fire & Casualty Company of North Carolina, Inc. ("Occidental") in this declaratory judgment action involving automobile insurance policies. The issue presented on appeal is simply whether the district court properly granted summary judgment to Occidental and denied summary judgment to National and C&K. For the reasons set forth below, we affirm the judgment of the district court.[1]

I.

At all relevant times, Eugene Howard ("Howard") was an independent contractor for C&K. Howard's agreement with C&K provided that he would be the owner/operator of his 1986 Kenworth truck tractor ("tractor"), and C&K would be the authorized carrier by virtue of the operating authority issued by the Federal Motor Carrier Safety Administration. Howard, a Georgia resident, owned his tractor and also had a vehicle for personal use. Howard's daily routine was to

---

[1] In response to this court's January 18, 2013 order, Occidental timely filed a motion for leave to amend its complaint in order to sufficiently allege the citizenships of all of the members of C&K. That motion is granted. After reading Occidental's second amended complaint, we are satisfied that complete diversity of citizenship exists and conclude this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

"bobtail" his tractor—drive without a trailer—the 29-mile route on Highway 21 from his home in Springfield, Georgia to C&K's trucking terminal in Port Wentworth, Georgia. Howard typically arrived at C&K each morning around eight o'clock and waited to be dispatched to pick up a load. C&K's normal dispatching process required local drivers to drive, not telephone, to the terminal to receive dispatch orders. On a typical work day, Howard did not know what he was going to haul, as he was never given dispatch orders until after he arrived at the C&K terminal.

On Saturday, January 30, 2010, Howard hauled trailers for C&K.[2] On his way home from work, Howard was involved in a motor vehicle accident. He completed an accident report, and David Lewis, C&K's terminal manager, instructed Howard to bring the report to C&K on Monday when he came to work. Howard opted not to go to work on Monday, February 1, 2010. While bobtailing to the C&K terminal the morning of Tuesday, February 2, 2010, Howard was involved in a second accident, this time with Ruth Mathis, the accident at issue in this case. The accident occurred at approximately eight o'clock and about one-quarter mile from the C&K terminal.

---

[2] The parties dispute whether Howard left a job unfinished on Saturday, January 30, 2010, requiring his return to the C&K terminal the following Monday. For summary judgment purposes, the court will view the facts in the light most favorable to National and C&K and assume that Howard had completed his run.

3

At the time of the accident with Ruth Mathis, Howard had two insurance policies covering his tractor: one, a bobtail policy providing non-trucking liability coverage from Occidental; the other, a commercial general liability policy from National.

Occidental's non-trucking policy expressly excludes coverage when the vehicle is being "[u]sed to carry property in any business or in route for such purpose." [R. 38-6 at 2.] National's commercial policy provides coverage for a covered auto when that auto "[i]s being used exclusively in [C&K's] business as a 'trucker[.]'" [R. 40-6 at 3–4.] The National policy defines "trucker" as "any person . . . *engaged in the business of* transporting property by 'auto' for hire." [*Id.* at 13 (emphasis added).]

Following the accident, Ruth and James Mathis ("the Mathises") filed suit against Howard in Georgia state court. Occidental then filed this declaratory action against National, C&K, Howard, and the Mathises, alleging that its policy does not provide coverage to Howard for the February 2, 2010 accident. Occidental and National and C&K filed cross motions for summary judgment. Occidental argued that Howard was operating his tractor to carry for C&K, thus excluding coverage under the Occidental policy. National and C&K disagreed, arguing that Howard was not operating his tractor in the business of C&K at the

4

time of the February 2, 2010 accident.  The district court granted summary judgment in favor of Occidental.

## II.

"We review *de novo* the district court's rulings on the parties' cross motions for summary judgment."  *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (internal quotation marks omitted).  The parties agree that Georgia contract law governs this dispute.

## III.

Appellants' appeal boils down to their argument that Howard had completed any runs he had previously been assigned by C&K, and that he was not in his "regular work pattern or operational routine" by virtue of his accident on Saturday, January 30, 2010.[3]  Relevant Georgia law provides that "a lessor may remain in the trucking business, even after he has delivered his load, if he is acting within his normal 'work pattern' or 'operational routine' in furtherance of the interests of the

---

[3] Appellants raised this argument in their response to Occidental's motion for summary judgment, but not in their brief supporting their motion for summary judgment.  Nevertheless, because the two motions are intertwined, we address Appellants' argument in both contexts.

lessee/trucking company." *Liberty Mut. Fire Ins. Co. v. Axis Surplus Ins. Co.*, 294 Ga. App. 417, 419, 669 S.E.2d 219, 221 (2008).  Appellants argue that Howard was ineligible for dispatch following the January 30, 2010, accident until C&K "corporate" issued its approval for Howard to receive further orders, and that Howard knew or should have known that.[4]  Thus, they argue, he was not "on call" to receive a dispatch at the time of his accident with Ruth Mathis, and therefore, was outside of his normal work pattern and operational routine, i.e., outside of C&K's "trucking business."

While Appellants' argument is creative, it is not persuasive.  First, Howard's normal work pattern was to bobtail his tractor to the C&K terminal, receive and perform dispatch orders, drive his tractor home, and park it in his yard.  There is no evidence that anyone at C&K told Howard that he was suspended or ineligible to receive dispatch orders after the January 30, 2010, accident.  There is also no evidence that he was ever made aware of C&K's policy of requiring approval from the company before allowing a driver involved in an accident to receive dispatch orders.  Moreover, as the district court pointed out, Howard was not on a personal errand that might have taken him out of his normal work pattern and operational

---

[4] The nature of C&K's practice of obtaining corporate approval before allowing a trucker to return to duty after being involved in an accident is unclear.  The evidence to which Appellants refer the court does not support Appellants' contention that Howard was ineligible to receive dispatch orders on February 2, 2010.  [*See* Appellants' Br. at 25 (referring the court to R. 50-1 at 2).]

6

routine.  Howard was one-quarter mile from the C&K terminal when the accident with Ruth Mathis occurred, and he testified numerous times that he owns a separate vehicle for personal use and does not drive his tractor unless he is going to or from work.  Appellants' conclusory allegation that Howard would not have been dispatched on February 2, 2010, had he arrived without incident to the C&K terminal on that date, is not sufficient to defeat Occidental's motion for summary judgment.  Howard's bobtailing to the C&K terminal on February 2, 2010, was within his normal work pattern or operational routine as a trucker as defined by Georgia case law.  *See Liberty Mut.*, 294 Ga. App. at 419–20, 669 S.E.2d at 221 (finding truck driver who had delivered a load and was on his way home at the time of the accident had not deviated from his normal work pattern or operational routine and was thus in the business of the trucking company).  Accordingly, because Howard was operating his covered tractor "exclusively in [C&K's] business as a 'trucker'" when he was involved in the accident with Ruth Mathis, National's policy provides coverage.

Finally, the district court properly found that Occidental's non-trucking insurance policy excluded coverage for Howard's accident with Ruth Mathis on February 2, 2010.  Because Occidental's policy expressly excludes coverage when

7

the vehicle is being "[u]sed to carry property in any business or in route for such purpose" [R. 38-6 at 2], Occidental's policy does not provide coverage here.

IV.

For the aforementioned reasons, we affirm the district court's grant of summary judgment in favor of Occidental and its denial of summary judgment to National and C&K.

**AFFIRMED.**

8