[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10904
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-03775-LMM

LAURI L. BURTON,

                                                        Plaintiff-Appellant,

versus

GWINNETT COUNTY SCHOOL DISTRICT,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 28, 2018)

Before ED CARNES, Chief Judge, JORDAN, and HULL, Circuit Judges.

PER CURIAM:

Lauri Burton brings a mixed-motive employment discrimination claim following an incident that led to her forced resignation. She contends that her former employer, the Gwinnett County School District, discriminated against her because she is white. The district court granted summary judgment in favor of the school district. Burton now appeals.

I.

Burton began working as a teacher at B.B. Harris Elementary School in 2001 and was promoted to principal in 2007. During the summer of 2015 the school district issued Burton a disciplinary letter after she solicited and received prescription dog medication from a subordinate, repeatedly failed to arrive to work on time, and created an inhospitable work environment. The letter notified her that failing to improve her performance could result in termination.

About three months later, Burton removed a disruptive student to a conference room along with two assistant principals: Sheldon Jefferson and Michelle Davis. The student is an African American male and the two assistant principals are also African American. While in the conference room the student repeatedly slammed a chair against the wall, creating a small indentation. Two days later Burton met with the student's family and falsely claimed that the student had made a hole in the wall of the conference room. When the student's aunt asked to see the hole, Burton lied and told her that the room was occupied but that

2

she could return the next day to see the hole or a staff member could email her a picture.

That afternoon Burton, Jefferson, and Michelle Davis went to the conference room, where Michelle Davis began mimicking the boy by pushing the chair into the wall. Burton told Michelle Davis to stop and retrieved a hammer that Jefferson had told her was in a nearby closet. Burton gave the hammer to Jefferson who used it to create a hole in the wall. Jefferson also photographed the hole and emailed the picture to the student's family. Michelle Davis eventually reported her misconduct to Associate Superintendent for Human Resources, Frances Davis.

When she learned of the incident, Associate Superintendent Davis arranged separate meetings with Burton and Jefferson. Before these meetings Associate Superintendent Davis spoke with Superintendent Wilbanks. Wilbanks told her that in light of Burton's previous disciplinary letter, Burton could not remain in her position if the allegations were true. He instructed Davis that, if the allegations were true, she should tell Burton that the school district would recommend termination unless Burton voluntarily resigned or retired. Wilbanks testified that he and Associate Superintendent Davis did not discuss race during this conversation.

Associate Superintendent Davis then met with Burton, who admitted that the incident took place. Burton alleges that as Associate Superintendent Davis led

3

Burton to meet with the retirement director, Davis told Burton: "This could look like you framed children. This is a little black boy. This is two black AP's." Associate Superintendent Davis denies making this statement. Associate Superintendent Davis met separately with Jefferson and, because she believed he acted under Burton's supervision, issued him a disciplinary letter.

Associate Superintendent Davis determined that the school district should also file a report with the Georgia Professional Standards Commission detailing Burton's and Jefferson's behavior. Sidney Camp, the Executive Director of Human Resources and Staffing, prepared the report. While discussing the incident with an investigator, Camp made the following statement:

> CAMP: And see, you know, well, nothing is off the record but think about what was going on at the time. You know, this whole "Black Lives Matter," you know, and with the police, and, you know, all that kind of stuff was swirling as well and so to have a situation where, you know, where —
>
> INVESTIGATOR: the Administrators —
>
> CAMP: and the Principal and you've got Administrators and the child was African-American, you know? Of course, Sheldon, he is African-American and the other Assistant Principal, she is African-American. But with a white Principal issuing some directives, you know, to do this and framing this child, you know, you can see how that would come across.

Burton filed a complaint with the Equal Employment Opportunity Commission on April 16, 2016. Burton then filed the present lawsuit claiming that

the school district's treatment of her constituted employment discrimination under Title VII of the Civil Rights Act of 1964. The magistrate judge issued a report and recommendation concluding that the district court should grant the school district's motion for summary judgment. The district court adopted the magistrate judge's report and granted the motion. This is Burton's appeal.

## II.

We review de novo a district court's decision to grant summary judgment, drawing "all reasonable inferences in the light most favorable to the non-moving party." Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986) (quotation marks omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S. Ct. at 2510.

Burton contends that it was inappropriate for the district court to grant summary judgment in favor of the school district because even if her disciplinary record provided some support for her termination, a jury could reasonably conclude that race was also a motivating factor. We disagree.

A plaintiff can succeed on a mixed-motive claim by showing that illegal bias "was a motivating factor for an adverse employment action, even though other factors also motivated the action." Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016) (quotation marks omitted). Under a mixed-motive theory a plaintiff must provide "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was a motivating factor for the defendant's adverse employment action." Id. at 1239. Such evidence may be direct or circumstantial. Id. at 1235.

Burton has provided no direct evidence that Superintendent Wilbanks'decision to terminate Burton was based on her race. Instead she argues that two statements made by Camp and Assistant Superintendent Davis provide circumstantial evidence that Wilbanks' decision was motivated in part by race. But these statements on their own are insufficient to convince a reasonable jury that Burton was fired because of her race. They show that two of Wilbanks' subordinates were concerned that Burton's misconduct might inflame racial tension at the school, but provide no evidence that Wilbanks was motivated by or even aware of these concerns.

Camp's statement to the Georgia Professional Standard's Commission was related to an entirely different proceeding and Camp did not claim to have any

6

insight into Wilbanks' decisionmaking process. His statement is too attenuated from Wilbanks' earlier decision to terminate Burton to provide adequate evidence that racial bias motivated that decision.

The statement allegedly made by Associate Superintendent Davis as she led Burton to discuss her retirement options was less removed from Burton's termination. But importantly that statement only provides circumstantial evidence as to why Associate Superintendent Davis herself might have felt that Burton's termination was justified. While a statement made by a non-decisionmaker may be sufficient if it provides strong circumstantial evidence that an employment decision was made based on an individual's race, Davis' statement does not provide such evidence. Davis did not say that Burton should be fired because of her race, but expressed concern that Burton's misconduct itself could be perceived as racially motivated. And Burton has provided no evidence linking Davis' views to Wilbanks' decision. While Wilbanks learned of the incident from Davis, Wilbanks testified under oath that he and Davis did not discuss race and Burton has admitted that she has no reason to believe he was untruthful.

Burton argues that two of our cases support the proposition that statements made by non-decisionmakers after an adverse employment action has taken place can raise the inference that a decisionmaker was tainted by racial bias. See Quigg, 814 F.3d at 1235; Bass v. Bd. of City Comm'rs, 256 F.3d 1095 (11th Cir. 2001).

7

While we agree that statements by non-decisionmakers and statements made after an adverse employment decision has already been made might constitute a sufficient showing of circumstantial evidence in some circumstances, neither case relied on by Burton supports her claim.

In Quigg the plaintiff's contract as the superintendent of a school district was not renewed when she suggested hiring a woman as assistant superintendent after school board members had expressed a preference for a man.  See Quigg, 814 F.3d at 1233.  Quigg offered the following as circumstantial evidence of gender bias:  (1) a school board member's statement to a parent that it was "time to put a man in there" while referring to the assistant superintendent position; (2) the recommendation of two school board members that Quigg hire a "tough hatchet man" for the position; (3) a school board member's statement to Quigg that she should consider a male assistant superintendent because it is important to achieve gender balance in the school administration; and (4) a statement made by a school board member shortly after the renewal vote admitting that she voted against Quigg because Quigg "needed a strong male to work under her to handle problems, someone who could get tough."  Id. at 1241.  We determined that these statements constituted sufficient circumstantial evidence because they were made "(1) during conversations about whether to renew Quigg's contract, (2) in relative temporal proximity to the vote, and (3) specifically referring to the composition of the office

8

of the superintendent." Id. at 1242.

Burton argues that our reliance in Quigg on a statement made after the adverse employment decision had already been made supports her contention that the statements she offers provide sufficient circumstantial evidence that Wilbanks' decision to terminate her was influenced by racial bias. But in Quigg the post-decision comment explicitly stated that a decisionmaker made an adverse employment decision because the plaintiff would not hire a male. Unlike the statements offered in the present case, the statement Burton points to in Quigg provided clear evidence that bias was a factor motivating the decisionmaking process.

Burton also relies on our decision in Bass to support the proposition that statements by non-decisionmakers can provide adequate circumstantial evidence that a decisionmaker's actions were influenced by racial bias. Bass was a single-motive discrimination case in which we held that a non-decisionmaker's statement that a county government would "continue to promote based on color" provided adequate circumstantial evidence of bias because it "rais[ed] the inference that the [decisionmakers] improperly based their decisions on race." Bass, 256 F.3d at 1107. But the statements Burton points to do not indicate that Wilbanks considered race in deciding to terminate Burton.

The statements offered by Burton are insufficient because of their content, not just because of who made them or when they were made. Wilbanks testified that race was not discussed during his conversation with Associate Superintendent Davis in which he directed her to terminate Burton. Burton testified that she had no reason to believe that Wilbanks was not truthful during his deposition. She has provided only two vague statements made by individuals who lacked the power to fire her; neither statement related specifically to bias in Wilbanks' decision-making process or linked Wilbanks' decision to concerns expressed by his subordinates that Burton's misconduct could be perceived as racially motivated. So we agree with the magistrate judge that while Burton's "burden in providing evidence sufficient to survive summary judgment on a mixed-motive theory is light, she has failed to carry that burden here."

**AFFIRMED.**

10