*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 9**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

TAMERA GONZALEZ, SEBASTIAN GONZALEZ,
and MARIA ANTONIETA GUJARDO,
*Appellants,*

*v.*

KIRK CULLIMORE, JR.; The Law Offices of KIRK A. CULLIMORE,
*Appellees.*

PEMBERLEY AT ROBINSON'S GROVE CONDOMINIUM
UNIT OWNERS ASSOCIATION,
*Plaintiff,*

*v.*

TAMERA GONZALEZ,
*Defendant.*

No. 20160373
Filed February 26, 2018

On Direct Appeal

Fourth District, American Fork
The Honorable Thomas Low
No. 100100829

Attorneys:

Brian W. Steffensen, Salt Lake City, for appellants

Kirk Cullimore, Derek J. Barclay, Kirk A. Cullimore, Jr., Sandy,
for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE
and JUDGE HYDE joined.

Due to her retirement, JUSTICE DURHAM did not participate herein;
and DISTRICT COURT JUDGE NOEL S. HYDE sat.

JUSTICE PETERSEN became a member of the Court on
November 17, 2017, after oral argument in this matter
and accordingly did not participate.

———————————

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶ 1   Tamara Gonzalez, an owner of a condominium unit within
Pemberley at Robinson's Grove Condominium Unit Owners
Association (Association), allegedly fell behind on paying her
Association assessment fees. The Association hired a law firm to
collect on the delinquent fees. The firm sent demand letters to
Ms. Gonzalez, who upon receipt of the letters, claimed that the
letters misrepresented the amount she actually owed. When
negotiations between the Association and Ms. Gonzalez fell through,
the Association again contacted the law firm for collection services,
and the firm subsequently filed a lawsuit against Ms. Gonzalez on
behalf of the Association. After several years of proceedings,
Ms. Gonzalez brought a counterclaim against the law firm, asserting,
in addition to other claims, that the law firm had violated § 1692e of
the Fair Debt Collection Practices Act (FDCPA)[1] by misrepresenting
the character, amount, and legal status of the debt she owed in the
law firm's demand letters and in its complaint.

¶ 2   The law firm brought a motion for summary judgment on
the counterclaims and the trial court granted the motion in part,
dismissing Ms. Gonzalez's § 1692e counterclaims. In support of its
dismissal, the court relied on a Utah Court of Appeals decision,
*Midland Funding LLC v. Sotolongo*,[2] which held that the FDCPA was
not a strict liability statute and that a debt collector may rely on its
client's representations of the amount of the debt owed without
incurring FDCPA liability. The district court held, pursuant to
*Midland Funding*, that the law firm relied on the Association's
representation and so was not liable under § 1692e of the FDCPA.

¶ 3   Ms. Gonzalez appeals the district court's dismissal of her
§ 1692e claims and also contends that we should abrogate the
holding in *Midland Funding*. She argues that the *Midland Funding*
court applied the wrong standard for evaluating § 1692e claims. She

———————————

[1] 15 U.S.C. §§ 1692–1692p (2016).

[2] 2014 UT App 95, 325 P.3d 871.

further argues that her § 1692e claims should be evaluated under a strict liability standard (a standard in which a debtor is not required to show that a debt collector intended or had knowledge that it was misrepresenting the character or amount of the debt) and that the district court was therefore wrong in dismissing her claims merely because the law firm produced evidence showing that it had relied on the representations it had received from the Association. Ms. Gonzalez asks this court to overturn *Midland Funding* and to reverse the district court's partial grant of summary judgment.

¶ 4 We hold that the court of appeals erred in the standard it applied to § 1692e claims and accordingly abrogate *Midland Funding*. Not only does *Midland Funding* misstate the Ninth Circuit Court of Appeals' standard for § 1692e claims, but the standard set forth in *Midland Funding* clearly contradicts the language of the FDCPA. Additionally, a strict liability interpretation of § 1692e is consistent with § 1692k(c) of the FDCPA. That section creates an affirmative defense to strict liability for "bona fide errors"—those errors that are unintentional and not preventable by procedures the debt collector should have in place to check the accuracy of representations made to it by clients. Reading a scienter requirement into § 1692e, as *Midland Funding* suggests, would render § 1692k(c) superfluous—an action we should avoid. We accordingly follow the overwhelming majority of courts and hold § 1692e claims to a strict liability standard.[3]

---

[3] Although we refer to the FDCPA, including § 1692e, as a strict liability statute, we acknowledge that this characterization does not entirely comport with the way in which the term "strict liability" is traditionally used. Courts are virtually unanimous in labeling the FDCPA a strict liability statute, but they generally do so because the statute imposes liability without proof of an intentional violation, not because the defendant's culpability is completely irrelevant. *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) ("The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation."); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) ("The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute."). The defendant's culpability is relevant under the FDCPA, but only in determining whether the defendant has met his or her affirmative defense under § 1692k(c). *See* 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if

(Continued)

¶ 5   Even under a strict liability standard, however, a plaintiff is still required to make a threshold showing that a misrepresentation occurred under the FDCPA. And, because the law firm was the moving party on summary judgment in this case, it bore the initial burden of showing that it did not engage in an act prohibited by the FDCPA—or, in other words, that there is no genuine issue of material fact as to its claims that it made no false representation of the character, amount, or legal status of Ms. Gonzalez's debt. Yet the district court failed to determine whether the law firm had met its initial burden. We therefore remand the case to the district court to make such determination.

**Background**

¶ 6   Tamara Gonzalez purchased a condominium unit in 2006 located within Pemberley at Robinson's Grove in Pleasant Grove, Utah. She purchased her unit subject to a validly recorded Declaration of Condominium, a document containing certain covenants, conditions, and restrictions on the property, one of which required the payment of monthly assessments to cover maintenance and services provided by the Condominium Unit Owners Association. The Declaration also provided that a unit owner would be liable to the Association for late payment fees, interest, and cost incurred in collecting on delinquencies of such assessments, including reasonable attorney fees. Sometime in 2009, Ms. Gonzalez allegedly fell behind on her assessment payments. In November 2009, the Association hired the Law Office of Kirk A. Cullimore (the Cullimore firm) to collect on Ms. Gonzalez's delinquent assessments. At the time the Cullimore firm was hired, Sam Bell, an attorney for the Cullimore firm, reviewed the Association's ledger to see if Ms. Gonzalez was in arrears. Shortly thereafter, the Cullimore firm sent Ms. Gonzalez demand letters, notifying her that her account with the Association was in arrears and demanding payment. The Cullimore firm also recorded a lien on her unit, pursuant to the Declaration. After receiving these letters, Ms. Gonzalez contacted the Cullimore firm and the Association by phone and disputed the amount of the debt represented by the Cullimore firm. Thereafter, Ms. Gonzalez

---

the debt collector shows . . . that the violation was not intentional . . . ."). Thus, when we describe the FDCPA as a strict liability statute, or § 1692e as a strict liability provision, we mean the plaintiff does not need to prove culpability of the defendant to establish prima facie liability under the act.

and the Association entered an oral payment agreement, but the agreement soon fell apart.

¶ 7   In January 2010, the Association again hired the Cullimore firm to commence collection proceedings on Ms. Gonzalez's delinquent fees. Mr. Bell, who was still working for the Cullimore firm, again checked the Association's ledger to confirm that Ms. Gonzalez's account with the Association was delinquent. The Cullimore firm then filed a lawsuit on behalf of the Association on March 12, 2010. Ms. Gonzalez failed to file an answer within the prescribed time and a default judgment order was entered against her on March 14, 2011. Mr. Bell thereafter left the Cullimore firm and started SEB Legal, LLC. The Association transferred its business, including Ms. Gonzalez's collection lawsuit, to SEB Legal, who represented the Association through the rest of its litigation.

¶ 8   After two years of negotiations and proceedings, the parties eventually stipulated to setting aside the original default judgment against Ms. Gonzalez. The district court set aside the judgment and granted Ms. Gonzalez leave to answer and make counterclaims. Ms. Gonzalez filed her answer and counterclaim on December 15, 2013, asserting claims under the FDCPA against the Law Office of Kirk A. Cullimore and Kirk A. Cullimore, Jr. (collectively, Cullimore) and SEB Legal, LLC, Sam Bell, and Jayln Peterson (collectively, SEB). Ms. Gonzalez's counterclaim included, among others, claims under § 1692e of the FDCPA for false representation of the character, amount, and legal status of the debt she owed. Specifically, Ms. Gonzalez argued that SEB and Cullimore had falsely represented the amount she owed the Association in the demand letters she received and in the lawsuit commenced against her. She also asserted that both law firms continued to falsely represent the amount and character of the debt she owed throughout the course of litigation. Ms. Gonzalez attached to her counterclaim a detailed accounting of the assessment payments she owed and those she paid during the years of 2009 to 2013. She also attached a verification statement, in which she swore, under penalty of perjury, that the factual allegations within her counterclaim were true and that she did not owe the amount claimed by the Association, SEB, or Cullimore.

¶ 9   Both SEB and Cullimore filed motions for summary judgment seeking to dismiss Ms. Gonzalez's § 1962e counterclaims. In support of these motions, the law firms provided the court with the Association's ledger on Ms. Gonzalez's account, a copy of the Declaration, Ms. Gonzalez's warranty deed, and an affidavit signed by Mr. Bell stating that he had verified Ms. Gonzalez's arrearage on

the Association's ledger when Cullimore initially received her file from the Association in November 2009, and again in January 2010, before Cullimore filed suit against Ms. Gonzalez with the district court. Ms. Gonzalez filed memoranda in opposition to these summary judgment motions and provided the court, through reference to her counterclaim, with a detailed spreadsheet illustrating the payments she allegedly had made to the Association from 2009 to 2013, her calculated delinquency for each month, as well as a sworn statement from Ms. Gonzalez affirming that the facts alleged in the counterclaim were true and that she did not owe the purported amount.

¶ 10 The trial court granted both motions in part and dismissed Ms. Gonzalez's § 1692e claims, leaving her other claims intact. Before the court ruled on Cullimore's motion, but after it had dismissed Ms. Gonzalez's § 1692e claims against SEB, Ms. Gonzalez moved the court to reconsider its order on SEB's motion, but the court issued an order refusing to do so. In all three orders from the district court—the order on SEB's summary judgment motion, the order on Cullimore's summary judgment motion, and the order denying reconsideration of its ruling on SEB's summary judgment motion—the court held Ms. Gonzalez was precluded from bringing her § 1692e claims against Cullimore and SEB by *Midland Funding LLC v. Sotolongo*,[4] a Utah Court of Appeals decision, because SEB and Cullimore had reasonably relied on the Association's representation of the character and amount of debt Ms. Gonzalez allegedly owed.

¶ 11 After the district court denied Ms. Gonzalez's motion to reconsider, Ms. Gonzalez entered into a settlement agreement with SEB and the Association. She therefore did not seek reversal of the district court's order on SEB's motion or the order denying reconsideration of the court's ruling on SEB's motion. Instead, Ms. Gonzalez timely appealed the court's order granting in part Cullimore's motion for summary judgment.[5] On appeal, Ms. Gonzalez argues that Cullimore falsely represented the amount of debt Ms. Gonzalez owed to the Association in its demand letters and in the complaint Cullimore filed. Ms. Gonzalez also argues that

---

[4] 2014 UT App 95, 325 P.3d 871.

[5] Although Ms. Gonzalez repeatedly states that she is not challenging the district court's order on SEB's motion, she consistently asks this court to reverse the analysis that the district court relied upon in its order on SEB's motion.

Cullimore improperly sought assessment fees altogether because the Association allegedly failed to follow all legal requirements in assessing the fees.

¶ 12 We have jurisdiction to hear this case pursuant to Utah Code section 78A-3-102(3)(b).[6]

**Standard of Review**

¶ 13 Ms. Gonzalez raises two intertwined issues on appeal: first, whether the court of appeals' decision in *Midland Funding* applied the wrong standard in evaluating § 1692e claims, and second, whether the district court erred in granting summary judgment dismissing Ms. Gonzalez's § 1692e claims. This court is not, of course, bound by prior decisions of the court of appeals.[7] Additionally, we "review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness,

---

[6] The FDCPA is a federal statute, but this does not limit our authority to review claims arising under its provisions. Absent some explicit provision stating otherwise, state courts are presumed to have concurrent jurisdiction with federal courts over the interpretation and application of federal statutes. *See Haywood v. Drown*, 556 U.S. 729, 735 (2009) ("State courts . . . have . . . concurrent jurisdiction in all cases arising under the laws of the Union, where it was not expressly prohibited" (quoting THE FEDERALIST NO. 82, at 132 (Alexander Hamilton) (E. Bourne ed. 1947, Book II))); *Kish v. Wright*, 562 P.2d 625, 627 (Utah 1977) ("State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the . . . laws and treaties of the United States . . . where it is not excluded by express provision" (citation omitted)). The FDCPA does not expressly prohibit state court review of claims brought under its purview; rather, it explicitly authorizes courts of competent jurisdiction to conduct such review. 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . or in any other court of competent jurisdiction . . . ."). We therefore have authority to review FDCPA claims properly brought before us.

[7] *See State v. Francis*, 2017 UT 49, ¶ 16, --- P.3d --- ("A court of appeals pronouncement does not, of course, bind this court to a course of action."); *Geisdorf v. Doughty*, 972 P.2d 67, 70 n.1 (Utah 1998) ("A decision by the Utah Court of Appeals [is] not binding on this court . . . .").

viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[8] "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[9]

**Analysis**

¶ 14 The purpose of the FDCPA[10] is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[11] The heart of the FDCPA—§ 1692e—prohibits debt collectors from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt."[12] Specifically, § 1692e provides that a debt collector is liable when it makes "false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."[13]

¶ 15 In her counterclaim, Ms. Gonzalez asserted that Cullimore violated § 1692e by making a "false representation of the character, amount, and legal status" of her debt in its demand letters and in Cullimore's complaint. Cullimore argued, and the district court agreed, that it was not liable under § 1692e because it had relied on representations from the Association as to the character, legal status, and amount owed and simply relayed this information to Ms. Gonzalez. In its ruling and order on Cullimore's summary judgment motion, the district court implicitly concluded, by relying on *Midland Funding LLC v. Sotolongo*,[14] that § 1692e was not a strict

---

[8] *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 14, --- P.3d --- (internal quotation marks omitted) (citations omitted).

[9] *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 15, 367 P.3d 994 (quoting UTAH R. CIV. P. 56(a)).

[10] 15 U.S.C. §§ 1692–1692p (2012).

[11] *Id.* § 1692(e).

[12] *Id.* § 1692e.

[13] *Id.* § 1692e(2).

[14] 2014 UT App 95, 325 P.3d 871.

liability statute.[15] Accordingly, the district court reasoned that because Cullimore "rel[ied] on its client's representation as to the amount of the debt," and Ms. Gonzalez could not show that Cullimore had knowledge that the Association's representations to it were false, it was not subject to liability under the FDCPA.

¶ 16 Cullimore argues on appeal that the district court's interpretation of § 1692e is correct and precludes liability in this case. Conversely, Ms. Gonzalez argues that her § 1692e claims were improperly dismissed by the district court because the court relied on the incorrect analysis in *Midland Funding*. Ms. Gonzalez asserts that § 1692e establishes a strict liability standard that does not require a showing of intent, knowledge, or negligence, and that mere reliance on a client's representation does not automatically preclude liability under § 1692e. We agree with Ms. Gonzalez and, because the standard set forth in *Midland Funding* is incorrect, we abrogate it. We further remand this case to the district court to consider whether

---

[15] Although the district court did not explicitly state that the FDCPA is not a strict liability statute in its order on Cullimore's summary judgment motion, the court did express this opinion in Ms. Gonzalez's companion suit against SEB. In its order on Ms. Gonzalez's motion to set aside the dismissal of her § 1692e counterclaims against SEB—a motion which addressed the same issues as the case before us—the district court stated:

> The basis of [Ms. Gonzalez]'s motion is that 1692e is a strict liability statute and that the Utah appellate opinion holding otherwise is in error.
> The court declines to reconsider its September 19, 2014, ruling and order on the 1692e claims. It acknowledges that there is a split of opinion, nationwide, on the issue of whether the FDCPA is a strict liability statute. However, the *Midland Funding v. Sotolongo* case is a 2014 Utah appellate case that has not been reversed or disavowed. It is binding on this court, and this court lacks the prerogative to disregard it. Moreover, while there are federal rulings and opinions that disagree with *Midland Funding*, there are no opinions from the Tenth Circuit Court of Appeals that have done so. Therefore, this court declines to reconsider its September 19, 2014 ruling.

(Citation omitted.)

there is a genuine issue of material fact as to whether Cullimore made a false representation of the amount, character, or status of the debt Ms. Gonzalez allegedly owed.

## I. The Court of Appeals' Holding in *Midland Funding* is Incorrect Because § 1692e is a Strict Liability Provision

¶ 17 Cullimore argues that the district court correctly dismissed Ms. Gonzalez's § 1692e counterclaims because, as the court of appeals concluded in *Midland Funding LLC v. Sotolongo*,[16] the FDCPA is not a strict liability statute. According to Cullimore, "to maintain a claim for misstating the amount of debt" under § 1692e of the FDCPA, "a debtor must show that the debt collector *knowingly* misrepresented the amount of the debt." Cullimore argues that the district court correctly held that "a debt collector may rely on its client's representations as to the amount of debt" without violating the statute and has no duty to "independently investigate the amount owed." In other words, Cullimore contends, and the district court agreed, that under *Midland Funding* a consumer cannot make a successful § 1692e claim when the debt collector merely relays the creditor's representation of the amount owed to the consumer, even when the consumer adamantly denies the amount owed. This conclusion is wrong and stems from the *Midland Funding* court's (1) incorrect application of caselaw and (2) incorrect reading of the FDCPA. We therefore overturn *Midland Funding* on these two bases.

### A. The Midland Funding *Court Incorrectly Relied on* Clark, *Which Held the Opposite of* Midland Funding, *and* Bleich, *Which Confused the Correct Standard Under § 1692e*

¶ 18 We first abrogate *Midland Funding* because the court of appeals incorrectly based its holding on *Clark v. Capital Credit & Collection Services, Inc.*,[17] which actually stands for a proposition directly opposite to the one adopted by the *Midland Funding* court. In *Midland Funding*, the Utah Court of Appeals assessed a consumer's § 1692e claim that a debt collector misrepresented the amount of debt the consumer owed.[18] The court cited *Clark* for the assertion that, under § 1692e, "[a] debt collector may rely on its client's representations as to the amount of the debt" without violating the

---

[16] 2014 UT App 95, 325 P.3d 871.

[17] 460 F.3d 1162 (9th Cir. 2006).

[18] 2014 UT App 95, ¶ 3.

statute.[19] The *Midland Funding* court also concluded that "*Clark* . . . clearly holds that debt verification involves 'nothing more' than confirming in writing the amount owed with the creditor and that the FDCPA imposes no duty on a debt collector to independently investigate the claimed debt."[20] The *Midland Funding* court therefore concluded that any § 1692e claim asserting that the debt collector unreasonably relied on the creditor's representation, even absent further proof of intent or knowledge of the misrepresentation on the part of the debt collector, "is foreclosed by *Clark*."[21]

¶ 19 The *Midland Funding* court misconstrued *Clark*. While each of the assertions the Utah Court of Appeals cited above came from the *Clark* opinion, the Ninth Circuit made such statements solely in reference to claims brought under § 1692g of the FDCPA, as opposed to § 1692e—the provision in dispute in *Midland Funding*.[22] This is an important distinction. Section 1692g of the FDCPA deals with the "[v]alidation of debts," requiring a debt collector to follow specific notice provisions when initially communicating the debt to the consumer, and, upon written request of the consumer, to "obtain verification of the debt or a copy of a judgment" from the creditor and mail such verification or judgment to the consumer.[23] Section 1692e, on the other hand, deals with "any false, deceptive, or misleading representation[s] . . . in connection with the collection of any debt"—not notice procedures and debt verification requests.[24]

¶ 20 In *Clark*, the Ninth Circuit responded to one of the plaintiffs' arguments that defendants had "failed to verify properly the alleged debt, violating § 1692g."[25] Specifically, plaintiffs asked the Ninth Circuit to hold that a debt collector's duty to verify the debt under § 1692g also requires a debt collector to carefully review the creditor's representation of the balance, track the transactions that have occurred between the creditor and debtor in the past, and

---

[19] *Id.* ¶ 23.

[20] *Id.* ¶ 24 (citation omitted).

[21] *Id.*

[22] *Clark*, 460 F.3d at 1173.

[23] 15 U.S.C. § 1692g(a)(4).

[24] *Id.* § 1692e.

[25] *Clark*, 460 F.3d at 1173.

verify that the balance is still unpaid.[26] The Ninth Circuit refused to establish such a "high threshold" under § 1692g, and instead chose to adopt a more "reasonable standard."[27] In doing so, the *Clark* court held that, "[a]t the minimum, '*verification of a debt* involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'"[28] Because the debt collectors in *Clark*, upon written request for verification by the plaintiffs, "obtained information from [the creditor] about the nature and balance of the outstanding bill and provided the [plaintiffs] with documentary evidence in the form of an itemized statement," the *Clark* court held the debt collectors "were entitled to rely on their client's statements to verify the debt . . . and they did not violate §§ 1692g(a)(4) or 1692g(b)."[29] But none of the assertions the *Midland Funding* court credited to *Clark* dealt with § 1692e. Rather, the "reasonable standard" the *Clark* court established—and the *Midland Funding* court adopted—was intended to apply only to debt verification under § 1692g.

¶ 21 The very next section in *Clark* further supports this notion. Immediately after setting forth a debt collector's duty under § 1692g, the Ninth Circuit evaluated a § 1692e claim, noting that "[w]hether a violation of § 1692e may be predicated upon conduct that is neither knowing nor intentional appears to be an issue of first impression in the Ninth Circuit."[30] The *Clark* court then went on to expressly agree with the Seventh and Second Circuits that "§ 1692e applies even when a false representation was unintentional."[31] While the *Clark* court noted that a few courts had "[e]xamined [§ 1692e] in isolation" and concluded that "[t]o successfully state a claim pursuant to § 1692e(2), [the plaintiff] must show that [the debt collector] knowingly or intentionally misrepresented the amount of the debt in its collection letters,"[32] it decided to follow the majority of

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 1173–74 (emphasis added) (citation omitted).

[29] *Id.* at 1174.

[30] *Id.*

[31] *Id.* at 1175 (citation omitted).

[32] *Id.* at 1174–75 (quoting *McStay v. I.C. Sys., Inc.*, 174 F. Supp. 2d 42 (S.D.N.Y. 2001) (third, fourth, and fifth alterations in original)).

jurisdictions and held that the FDCPA's "broad language seems to make FDCPA a strict liability statute."[33] Yet the *Midland Funding* court concluded that *Clark* expressly required knowledge or intent to bring a § 1692e claim. Thus, the *Midland Funding* court fundamentally misconstrued *Clark*.

¶ 22 Also, the *Midland Funding* court relied on a second source that, unlike *Clark*, did incorrectly apply § 1692g's standard to § 1692e claims. In *Midland Funding*, the court stated that an "allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt."[34] Cullimore relies heavily on this rule to argue that Ms. Gonzalez presented the district court with no genuine issue of material fact on her § 1692e claims. The *Midland Funding* court took this rule verbatim from *Bleich v. Revenue Maximization Group., Inc.*[35] But the *Bleich* court, like the *Midland Funding* court, incorrectly applied § 1692g's standard to § 1692e—an action the *Clark* court expressly precluded. And the *Bleich* court's confusion of standards in the FDCPA has been rejected by several courts.[36] For example, in *Healey v. Trans Union LLC*,[37] a federal district court reviewed the same argument Cullimore makes today, and that the *Midland Funding* court's holding supports, and identified the error in such argument:

> [The debt collector] argues the [consumer] cannot prove her § 1692e(2) claim because the FDCPA does not impose on a debt collector any duty to independently investigate the debt or the debtor. Although [the debt collector] is correct, this rule applies to violations of § 1692g, not violations of

---

[33] *Id.* at 1175.

[34] 2014 UT App 95, ¶ 23 (citation omitted).

[35] 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002).

[36] *See, e.g.*, *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1270 (S.D. Fla. 2005) ("Defendants' argument boils down to an assertion that where a debt collector has complied with [§ 1692g's] notice requirements of the FDCPA, a plaintiff may not prosecute a claim under 15 U.S.C. § 1692e(2)(a). The argument goes too far."); *Eide v. Colltech, Inc.*, 987 F. Supp. 2d 951, 963 (D. Minn. 2013) ("The validation provision in § 1692g does not alter the plain language of § 1692e.").

[37] No. C09–0956JLR, 2011 WL 1900149 (W.D. Wash. May 18, 2011).

§ 1692e. As the Ninth Circuit noted in *Clark*, the court's determination that the debt collector's verification of the debt did not violate the FDCPA was not the end of the court's inquiry into the plaintiffs' claims. Rather, the court continued on to analyze the plaintiffs' claim that the debt collectors knew that the debt alleged by the creditor was invalid and misstated in violation of § 1692e(2)(A). The Ninth Circuit held that a debt collector's conduct need not be knowing or intentional to violate § 1692e.[38]

The *Healey* court went on to say

[T}he Ninth Circuit disapproved the standard the *Bleich* court applied to § 1692e claims. Although the *Clark* court agreed with *Bleich* that a debt collector may reasonably rely on its client's statements when verifying a debt pursuant to § 1692g, the court expressly disagreed with *Bleich*'s conclusion that a plaintiff must show that the debt collector knowingly or intentionally misrepresented the debt in order to prevail under § 1692e.[39]

¶ 23 *Midland Funding* made the same mistake the *Bleich* court did in this situation. *Midland Funding* applied § 1692g's standard—that a debt collector may reasonably rely on its client's representation when *verifying* a debt—to § 1692e claims. The *Midland Funding* court essentially holds that if a debt collector meets the verification standards in § 1692g, any § 1692e claim cannot be sustained unless there is evidence of intentional misrepresentation. As discussed above, this expressly contradicts *Clark* and the overwhelming majority of courts that have addressed the issue.[40] Because the *Midland Funding* court misconstrued the *Clark* opinion and reviewed the § 1692e claims under an incorrect standard, we today abrogate *Midland Funding*.

---

[38] *Id.* at *8 (footnote omitted) (citations omitted).

[39] *Id.* at *8 n.5 (citations omitted).

[40] *See, e.g., McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 247–48 (3d Cir. 2014) (disagreeing with *Bleich* and noting that a plaintiff need not successfully establish a § 1692g claim in order to bring a valid § 1692e claim); *see also infra* ¶ 28 & n.50.

*B. The Rule Established in* Midland Funding *Also Contradicts the Express Language of the FDCPA*

¶ 24 In addition to incorrectly relying on *Clark* and other cases, we also abrogate *Midland Funding* because the court of appeals' holding contradicts the language of the FDCPA itself. Section 1692k(c) sets forth the bona fide error defense that precludes liability when a debt collector's misrepresentation is *unintentional*. But under the standard established by the *Midland Funding* court, a debtor must show, as a threshold requirement, that a debt collector's misrepresentation *was intentional* when claiming relief under § 1692e, thereby rendering § 1692k(c) superfluous. Therefore, because the court's holding in *Midland Funding* undermines the language of the FDCPA, we also abrogate it on this ground.

¶ 25 Section 1692k(c) is a debt collector's sole defense to its unintentional violations of the FDCPA.[41] It provides:

> A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.[42]

¶ 26 This broad provision is widely known as the affirmative "bona fide error defense"[43] and is interpreted as being a "narrow exception to strict liability."[44] Courts view the existence of § 1692k(c)

---

[41] *See Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1074 (E.D. Cal. 2008) ("With the exception of the narrow bona fide error affirmative defense in § 1692k(c), the FDCPA imposes strict liability on debt collectors."); *Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F. Supp. 2d 795, 803 (D. Minn. 2009) ("Section 1692k(c) creates an exception to FDCPA liability for unintentional violations . . . .").

[42] 15 U.S.C. § 1692k(c).

[43] *Johnson v. Riddle*, 443 F.3d 723, 727 (10th Cir. 2006).

[44] *Clark*, 460 F.3d at 1177; *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011) ("[T]he FDCPA affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense.").

in the FDCPA as a strong indication that Congress intended § 1692e to be a strict liability provision.[45]

¶ 27 The court's reasoning in *Midland Funding* suggests, however, that liability under § 1692e cannot be sustained unless there is evidence that the debt collector intentionally or knowingly made a misrepresentation. This interpretation of § 1692e renders § 1692k(c) superfluous. "[B]y immunizing a debt collector for an unintentional violation where reasonable error-avoidance procedures have been employed, § 1692k(c) indicates that a violation of the FDCPA does not have to be intentional in the first place."[46] So "[a]n interpretation of the FDCPA that required an intentional violation would, of course, render this language pure surplusage."[47] In other words, "reading a scienter requirement into portions of the FDCPA that do not specify that knowledge or intent is required would render the affirmative bona fide error defense in § 1692k(c) superfluous."[48] Because both the United States Supreme Court and our court have "consistently . . . expressed a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment,"[49] we decline to adopt the *Midland Funding* court's interpretation.

¶ 28 Furthermore, the court's holding in *Midland Funding* is at odds with an overwhelming majority of jurisdictions who have almost unanimously held that the FDCPA is a strict liability statute.[50]

---

[45] *Clark*, 460 F.3d at 1176.

[46] *Glover v. FDIC*, 698 F.3d 139, 149 (3d Cir. 2012).

[47] *Id.*; *see also Clark*, 460 F.3d at 1176 ("Requiring a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c).").

[48] *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1362 (S.D. Fla. 2000) (citation omitted).

[49] *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (internal quotation marks omitted); *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 11, 368 P.3d 846 ("[W]e avoid '[a]ny interpretation which renders parts or words in a statute inoperative or superfluous' in order to 'give effect to every word of a statute.'" (second alteration in original) (citation omitted)).

[50] *See, e.g., Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448–49 (6th Cir. 2014) ("The FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent."); *McCollough*

(Continued)

And most of these courts have explicitly stated that § 1692e is a strict liability provision.[51] These courts believe that "a consumer need not

_____

*v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (same); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (same); *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001) (same); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (same); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238–39 (5th Cir. 1997) (same); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34–35 (2d Cir. 1996) (same); *see also Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2016 WL 247571, at *4 (D. Utah Jan. 20, 2016) ("Liability for falsely representing the character or legal status of a debt can be predicated upon conduct that was neither knowing or intentional."); *Frye v. Bowman, Heintz, Boscia & Vician, P.C.*, 193 F. Supp. 2d 1070, 1083 (S.D. Ind. 2002) ("[T]he plain language of § 1692e . . . contains no reference to knowledge or intent . . . . The court concludes that § 1692e does not require that the misrepresentations be knowing or intentional."); *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77, 82 (N.D.N.Y. 2001) ("[B]ecause § 1692e 'imposes strict liability on any debt collector that fails to comply with the [FDCPA's] provisions, knowledge or intent is only a factor in the liability stage of the proceedings and need not be pled to state a prima facie case.'" (second alteration in original) (citation omitted)).

[51] *See, e.g., Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("[Section] 1692e applies even when a false representation was unintentional." (citation omitted)); *Clark*, 460 F.3d at 1176 (holding that in § 1692e cases, "intent is only relevant to the determination of damages").

We note that while most courts describe § 1692e as a strict liability provision, many fail to fully define the meaning of this standard under the FDCPA. Instead, courts generally focus solely on the fact that the debtor need not prove the debt collector's misrepresentation was intentional in order to prevail under § 1692e. While this assertion is true, a strict liability standard also eliminates any requirement that a debtor show reckless or negligent conduct by the debt collector. In other words, as Judge Posner puts it, "the [debt collector's] representation need not be deliberate, reckless, or even negligent to trigger liability." *Ross v. RJM Acquisitions Funding, LLC*, 480 F.3d 493, 495 (7th Cir. 2007); *see also Osborn v. J.R.S.-I., Inc.*, 949 F. Supp. 2d 807, 810 (N.D. Ill. 2013) ("The presence of negligence, recklessness, or any other state of mind with respect to the false statements is . . . irrelevant, because a debt collector is liable for a

(Continued)

17

show intentional conduct by the debt collector to be entitled to damages."[52] The standard established by the *Midland Funding* court—that a consumer may not successfully argue that a debt collector unreasonably relied on a creditor's representation under § 1692e without asserting that the debt collector knew that the creditor's representation was false or misleading—is directly at odds with these courts and joins an ever-shrinking minority position.

¶ 29 While there are a small number of cases holding that § 1692e is not a strict liability provision,[53] these cases are often founded on shaky ground. For instance, a few of the federal district courts that have held intent or knowledge is required to succeed on a § 1692e claim are contradicted by courts within their same jurisdiction.[54]

---

false statement made in connection with collecting debt, regardless of his intentions."); *Smith v. Greystone All. LLC*, No. 09 C 5585, 2011 WL 2160886, at *4 (N.D. Ill. May 27, 2011) ("The Act imposes strict liability on collectors, and a consumer need not show intentional or even negligent conduct by the debt collector to be entitled to damages."). Accordingly, under this standard we do not look at the degree of the debt collector's culpability when determining whether a violation of § 1692e has occurred. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("The Act 'is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages.'" (citation omitted)); *Clark,* 460 F.3d at 1176 ("[T]he degree of a [debt collector's] culpability may only be considered in computing damages." (second alteration in original) (citation omitted)).

[52] *Russell*, 74 F.3d at 33.

[53] *See, e.g., McStay v. I.C. Sys., Inc.*, 174 F. Supp. 2d 42, 47 (S.D.N.Y. 2001) ("To successfully state a claim pursuant to § 1692e(2), [plaintiff] must show that [defendant] knowingly or intentionally misrepresented the amount of debt in its collection letters."); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996) ("[U]nder § 1692e(2), plaintiff would have to show that defendant knowingly misrepresented the character, amount, or legal status of the debt."); *Thompson v. Prof'l Collection Consultants*, No. 2CV 13-2474RGK, 2013 WL 12114592, at *2 (C.D. Cal. Sept. 18, 2013).

[54] *Compare McStay*, 174 F. Supp. 2d at 47 ("To successfully state a claim pursuant to § 1692e(2), [plaintiff] must show that [defendant] knowingly or intentionally misrepresented the amount of debt in its collection letters."), *and Nuss v. Utah Orthopedic Assocs., P.C.*, No.

(Continued)

Also, some jurisdictions following the minority view simply misconstrue *Clark*. For example, in *Thompson v. Professional Collection Consultants*,[55] a California federal district court addressed the merits of a § 1692e claim. After citing *Clark* for the proposition that in order to "successfully state a claim pursuant to § 1692e(2), [the plaintiff] must show that [the debt collector] knowingly or intentionally misrepresented the amount of the debt in its collection letters,"[56] the *Thompson* court went on to hold that the plaintiff "fail[ed] to state a plausible § 1692e(2) claim" because it "fail[ed] to allege that [the defendant] knowingly or intentionally misrepresented the Account."[57] Although the *Clark* opinion contained the phrase relied upon by the *Thompson* court, the *Clark* court only used that phrase to explain the minority view on § 1692e claims—a view the *Clark* court expressly rejects a mere few paragraphs later:

> Though the plain language of § 1692e does not include an intent element, it employs words—"false, deceptive, or misleading"—that connote volition. Examining the provision in isolation, then, it is reasonable to conclude—as have some other courts—that "[t]o successfully state a claim pursuant to § 1692e(2), [the plaintiff] must show that [the debt collector] knowingly or intentionally misrepresented the amount of the debt in its collection letters." *McStay v. I.C. System, Inc.*, 174 F. Supp.2d 42 (S.D.N.Y. 2001) . . . . However, "[i]n analyzing a statutory text, we do not look at its words

---

2:09-CV-647TS, 2011 WL 3328708, at *4 (D. Utah Aug. 2, 2011) ("[T]o state a claim under 15 U.S.C. § 1692e, a plaintiff must show that a misstatement of an amount owed is knowing or intentional."), *with Micare*, 132 F. Supp. 2d at 82 ("[B]ecause § 1692e 'imposes strict liability on any debt collector that fails to comply with the [FDCPA's] provisions, knowledge or intent is only a factor in the liability stage of the proceedings and need not be pled to state a prima facie case.'" (second alteration in original) (citation omitted)), *and Reid*, 2016 WL 247571, at *4 ("Liability for falsely representing the character or legal status of a debt can be predicated upon conduct that was neither knowing nor intentional.").

[55] 2013 WL 12114592.

[56] *Id.* at *2 (quoting *Clark*, 460 F.3d at 1175 (alterations in original)).

[57] *Id.*

> in isolation. Textual exegesis necessarily is a holistic endeavor . . . . Thus, we look not only to the language itself, but also to . . . the broader context of the statute as a whole." . . . .
>
> Parsing the FDCPA with the aim of placing § 1692e in its proper context, we encounter § 1692k(c) . . . . As our colleagues in other circuits have concluded, this broad language seems to make the FDCPA a strict liability statute.
>
> Latching onto that conclusion, the Seventh Circuit has held that "§ 1692e applies even when a false representation was unintentional." The Second Circuit has adopted a similar position.
>
> We agree with the Second and Seventh Circuits. Requiring a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c).[58]

The *Thompson* court, like the *Midland Funding* court, therefore simply misunderstood *Clark*. Thus, while a minority view exists, cases purporting this view are often suspect.

¶ 30 Accordingly, we abrogate *Midland Funding* because the court of appeals misapplied *Clark*, incorrectly applied § 1692g's standard to § 1692e claims, and the court's holding contradicts the express language of the FDCPA.

### II. The District Court Erred in Dismissing Ms. Gonzalez's § 1692e Claims on Summary Judgment

¶ 31 With the correct standard for § 1692e claims in mind, we must next determine whether the district court erred in granting in part Cullimore's motion for summary judgment, thereby dismissing Ms. Gonzalez's § 1692e claims. We hold that it did. The district court failed to determine whether Cullimore made false representations under § 1692e of the FDCPA and instead relied entirely on *Midland Funding* to dismiss Ms. Gonzalez's counterclaims. Under the correct standard, the district court should have first determined whether there was a genuine issue of material fact as to whether Cullimore misrepresented the amount, character, and legal status of the debt allegedly owed by Ms. Gonzalez. So we reverse the district court's

---

[58] *Clark*, 460 F.3d at 1174–75 (first, second, third, and fifth alterations in original) (footnote omitted) (citations omitted).

grant of partial summary judgment and remand this case to the district court to make this determination.

¶ 32 The district court erred in dismissing Ms. Gonzalez's § 1692e counterclaims because it relied on the erroneous holding in *Midland Funding*. We note that the district court's reliance on *Midland Funding* was certainly understandable, however, because, as it stated in its order denying reconsideration of its order on SEB's motion for summary judgment, *Midland Funding* was an appellate court case that, at the time of the district court's determination, was "binding" on the court and had not been "reversed or disavowed." [AIS Dist Dckt 127] Operating under the *Midland Funding* standard, the district court focused solely on whether Cullimore reasonably relied on the Association's records for the amount and character of the debt owed. Determining that Cullimore had, the district court granted Cullimore's motion and dismissed Ms. Gonzalez's § 1692e claims. The district court's analysis, however, was in error.

¶ 33 The proper analysis of a § 1692e claim requires the district court to first make a determination as to whether a false representation was made under § 1692e. In order to prevail on a FDCPA claim, a plaintiff must prove that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."[59] It is undisputed that the first two criteria are satisfied in this case. This case therefore turns on whether Cullimore met its initial burden on summary judgment to show that it did not engage in an act prohibited by the FDCPA—or, in other words, that there is no genuine issue of material fact as to its claims that it made no "false representation of . . . the character, amount, or legal status" of Ms. Gonzalez's debt.[60]

---

[59] *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000) (citation omitted).

[60] 15 U.S.C. § 1692e. As the moving party who does not bear the burden of proof on the § 1692e claims at trial, Cullimore may satisfy its initial burden "by showing that 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any [show] that there is no genuine issue of material fact.'" *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 30, 284 P.3d 630 (citation omitted). "'Upon such a showing . . . the burden then shifts to the nonmoving party' [, Ms. Gonzalez,] . . . 'who cannot rest

(Continued)

¶ 34 A debt collector may plead, however, the affirmative bona fide error defense, pursuant to § 1692k(c) of the FDCPA, in order to preclude liability under the statute. "[A]n FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error."[61] And a debt collector must prove these three elements "by a preponderance of [the] evidence."[62] It is important to note that a defendant seeking summary judgment based on the bona fide error defense under § 1692k(c) also bears the initial burden of demonstrating that no disputed issue of fact exists regarding the affirmative defense asserted.[63] If a debt collector meets this burden on all three elements, the district court should dismiss a plaintiff's § 1692e claim.

¶ 35 It is well established that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[64] Here, although the parties provided the court with affidavits and documents, the district court erred in failing to determine whether there was any genuine issue as to whether the amount of debt Cullimore represented to Ms. Gonzalez was a misrepresentation of the amount she actually owed the Association, or, whether the fees represented to her were legally assessed. As noted above, Cullimore represented several arrearage amounts to Ms. Gonzalez in its demand letters, complaint, and continually throughout litigation. Ms. Gonzalez denied these amounts in phone conversations with Cullimore after

---

on her allegations alone,'" but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations omitted).

[61] *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006); *see also* 15 U.S.C. § 1692k(c).

[62] 15 U.S.C. § 1692k(c).

[63] *Johnson*, 443 F.3d at 724 n.1; *Jones & Trevor Mktg.*, 2012 UT 39, ¶ 30 n.8 ("[W]here a defendant moving for summary judgment relies on an affirmative defense, 'the movant must establish [evidence supporting] each element of his claim in order to show that he is entitled to judgment as a matter of law.'" (second alteration in original) (citation omitted)).

[64] *Jones & Trevor Mktg.*, 2012 UT 39, ¶ 30 (citation omitted).

she received the demand letter, in her answer and counterclaim, and continually throughout litigation. In its ruling and order on Cullimore's summary judgment motion, however, the district court did not determine whether there was a genuine dispute as to whether a misrepresentation, and therefore a violation of § 1692e, had occurred. Instead, the district court focused on whether a genuine issue of fact existed as to Cullimore's reliance on the Association's representations—as required by the *Midland Funding* court.

¶ 36 The district court's order on Cullimore's summary judgment motion on the § 1692e claims in its entirety reads:

> First, Plaintiff claims Defendants lied about the amount of money she owed in both the demand letters they sent her and in the complaint. Falsely representing the amount of a debt is prohibited by title 15 section 1692e of the United States Code. However, a "debt collector may rely on its client's representations as to the amount of the debt." *Midland Funding LLC v. Sotolongo*, 2014 UT App 95, ¶ 23, 325 P.3d 871. There is no duty under the FDCPA for a debt collector "to independently investigate the amount owed[,] but only to confirm the amount claimed with their client." *Id.* This is true even if the debtor "vehemently denie[s]" the amount owed. *Id.* at ¶ 24 (internal quotation marks omitted).

> The evidence before the court shows that Sam Bell, then an employee of the law firm, consulted the association's records to determine the amount owed by Plaintiff when the law firm was retained to pursue the collection action. He reconfirmed that amount before filing a lawsuit against Plaintiff. In short, the firm took proper steps to confirm the amount owed with its client, the association. Even if Plaintiff is correct that the amount the firm sought was inflated by the association, this is not a basis to hold the firm liable for misrepresenting the amount owed.

(Alterations in original.) As the order shows, the district court failed to determine whether the amount of debt Cullimore represented to Ms. Gonzalez constituted a false representation under § 1692e. The district court declined to make this determination, merely ruling on

whether Cullimore met the standard in *Midland Funding*.[65] Because the *Midland Funding* court established an incorrect standard for reviewing § 1692e claims, the district court failed to make the correct determination on summary judgment. So we reverse the district

---

[65] The district court's order on Ms. Gonzalez's § 1692e claims in SEB's motion for summary judgment reflects the same analysis as the court's order in Cullimore's summary judgment motion. It reads in its entirety:

> Gonzalez's first FDCPA claim is that the SEB defendants filed papers with the court alleging an incorrect amount due. In *Midland Funding v. Sotolongo*, the Utah Court of Appeals observed
>
>> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. However, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt. A debt collector may rely on its client's representation as to the amount of debt. And the FDCPA does not impose on debt collectors a duty to independently investigate the amount owed but only to confirm the amount claimed with their client.
>
> (internal quotation marks and citations omitted).
>
> The SEB defendants have provided affidavit evidence that they confirmed the amount of the debt with their client. No evidence to the contrary has been submitted by Gonzalez. Therefore, there is no genuine issue of material fact on the issue and Gonzalez's first FDCPA claim fails.

Both orders show that the district court focused solely on *Midland Funding*'s standard—whether Cullimore relied on the Association's representation of the debt in Cullimore's actions against Ms. Gonzalez—and not whether Cullimore falsely represented the character, amount, or legal status of the debt Ms. Gonzalez owed.

court's holding and remand this case for the proper determination to be made.

¶ 37 We also note that reversal is proper because Cullimore failed to plead the affirmative bona fide error defense under § 1692k(c), which precludes liability under the FDCPA notwithstanding a violation. Cullimore neither used the term "bona fide error" in its answer to Ms. Gonzalez's counterclaim, nor mentioned § 1692k(c) and its elements. Instead, Cullimore stated only that it reasonably relied on the Association's representations. Rule 8(c) of the Utah Rules of Civil Procedure requires a party to "set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." If a party fails to raise an affirmative defense pursuant to rule 8(c), generally it is considered waived.[66] Cullimore failed to raise the bona fide error defense in its answer to Ms. Gonzalez's counterclaim and so likely waived this defense.[67]

---

[66] *Mack v. Utah State Dep't of Commerce, Div. of Sec.*, 2009 UT 47, ¶ 14, 221 P.3d 194 ("Normally, a party waives all defenses not raised in a responsive pleading, such as an answer or reply.").

[67] Even if Cullimore's responsive pleading could be said to have sufficiently pled the bona fide error defense of § 1692k(c) — by asserting that Cullimore reasonably relied on the Association's representation as to the amount of the debt owed — Cullimore has not established by a "preponderance of the evidence" the elements necessary to uphold the defense at summary judgment. While it is unclear whether Cullimore established that the alleged misrepresentation was (1) unintentional or (2) a bona fide error, it is clear that Cullimore did not show that (3) it made such an error despite having procedures in place reasonably adapted to avoid the error. This "procedures component" of the bona fide error defense "involves a two-step inquiry." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011) (citation omitted). First, we look at "whether the debt collector 'maintained' — i.e., actually employed or implemented — procedures to avoid errors." *Id.* (citations omitted); *see also Johnson*, 443 F.3d at 729; *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008). Second, we look at "whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Owen*, 629 F.3d at 1274 (citations omitted); *see also Johnson*, 443 F.3d at 729; *Reichert*, 531 F.3d at 1006. This test is a "fact-intensive inquiry." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008). But here Cullimore has provided no facts or evidence of procedures that

(Continued)

¶ 38 But rule 15 of the Utah Rules of Civil Procedures provides that a party may amend its pleading—including a responsive pleading—by leave of the court, and that "[t]he court should freely give permission when justice requires."[68] Likewise, "[w]e have consistently encouraged liberal treatment of motions to amend a pleading as long as justice is furthered, and not hindered."[69] In light of our liberal treatment of motions to amend and the fact that the parties were working under the then-operative *Midland Funding* standard at the time Cullimore filed its answer, Cullimore may seek to amend its answer to include the bona fide error defense of § 1692k(c). In determining whether Cullimore should be allowed to amend, the district court should consider whether justice so requires,

---

it employed or implemented to avoid misrepresentations. In fact, Cullimore has never argued that it had procedures in place to avoid errors or that the procedures it did have were reasonably adapted to avoid the specific error in this case. Cullimore merely submitted an affidavit stating that one of its attorneys, Mr. Bell, checked the Association's ledger before filing the lawsuit against Ms. Gonzalez. It has made no assertion, nor provided any evidence, that verifying the debt owed on the ledger is a policy of the company or that a policy to check a client's ledger before filing a suit or sending letters was reasonably adapted to avoid the false representation of the amount, character, or status of the debt owed to a consumer. Because Cullimore bears the burden of proving its affirmative defense on summary judgment, and Cullimore failed to carry this burden, we cannot affirm the district court's dismissal of Ms. Gonzalez's § 1692e counterclaims under the bona fide error defense. Rather, we reverse the district court's order and remand for further determination.

[68] UTAH R. CIV. P. 15(a)(2).

[69] *Pett v. Autoliv ASP, Inc.*, 2005 UT 2, ¶ 6, 106 P.3d 705; *see also Cheney v. Rucker*, 381 P.2d 86, 91 (Utah 1963) ("It is true . . . that Rule 8(c) requires that affirmative defenses be pleaded. It is a good rule whose purpose is to have the issues to be tried and clearly framed. But it is not the only rule in the book of the Rules of Civil Procedure. They must all be looked to in the light of their even more fundamental purpose of liberalizing both pleading and procedure to the end that the parties are afforded the privilege of presenting whatever legitimate contentions they have pertaining to their dispute. What they are entitled to is notice of the issues raised and an opportunity to meet them. When this is accomplished, that is all that is required." (citation omitted)).

weighing "(1) the timeliness of the motion; (2) the justification for delay; and (3) any resulting prejudice to the responding party."[70]

¶ 39 Accordingly, we reverse the district court's grant of partial summary judgment and remand this case to the district court to make the appropriate determinations.

**Conclusion**

¶ 40 The district court granted in part Cullimore's motion for summary judgment and dismissed Ms. Gonzalez's § 1692e claims based solely on the Utah Court of Appeals' holding in *Midland Funding*. Because the *Midland Funding* court misconstrued *Clark*, misstated the correct standard, one observed by an overwhelming majority of courts, and set forth a holding that contradicts the plain language of the FDCPA, we overturn its opinion. We therefore reverse and remand this case to the district court to determine whether Cullimore satisfied its initial burden on summary judgment of showing that there is no genuine issue of material fact as to its claims that it did not misrepresent the character, amount, or legal status of the debt Ms. Gonzalez owed the Association.

---

[70] *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2013 UT 24, ¶ 26, 309 P.3d 201 (citation omitted).